COX et al., Respondents, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, March 7, 1905.**

1. **TRESPASS: Treble Damage Act: Measure of Damages.** In an action aga'nst a railroad company under section 4572, Revised Statutes of 1899, for removing sand from plaintiff's land, the measure of damages is treble the value of the sand removed; the ordinary rule of damages, which is the difference in the value of the land before and after the removal, can not be applied in an action brought under said statute.

2. ———: ———: **Probable Cause.** Under section 4575, Revised Statutes 1899, if it should appear in such an action that the defendant had probable cause to believe that it had a contract with the owner to take sand from his property, the plaintiff could recover single damages only.

3. ———: ———: **Agreement.** Section 1058, Revised Statutes of 1899, does not release railroad companies from liability under section 4572, but where a railroad company has failed to agree with the owner or to have commissioners appointed, as provided by said section, it is guilty of a willful trespass and liable for treble damages for removing material from another's land.

4. ———: ———. **Agreement With Owner: Statute of Frauds.** An agreement giving a railroad company the right to remove sand. from the land of an adjacent owner does not give the railroad company an interest in the land so as to require such an agreement to be in writing, nor does section 1058, Revised Statutes of 1899 require an agreement made. thereunder to be in writing.

5. **HUSBAND AND WIFE: Agency.** The agency of a husband to make a contract on behalf of his wife whereby another may enter upon and take material from her land, can not be presumed from the relation, but must be shown by direct evidence or by such facts and circumstances as will warrant a reasonable inference to that effect.

Appeal from Butler Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED.

*L. F. Parker* and *James Orchard* for appellant.

(1)   In cases in this State, under a statute similar
to the present one, the courts hold that railroad com-
panies are not liable for trespass when the company
takes material from land for the purpose of construct-
ing its roadbed.   Railroad v. Railroad, 25  Mo. 550;
Leavy v. Railroad, 38 Mo. 485.   (2)   Our next conten-
tion is that the court erred in  overruling  defendant's
objection to the testimony on the measure of damages.
Bungerstock v. Drainage Co., 163 Mo. 198, 64 S. W. 149;
Foncannon v. Kirksville, 88 Mo. 279.   The recipient of
a parol   license to occupy premises cannot be charged
as a trespasser or a tortfeasor.   Seifert v. Withington,
et al., 63 Mo. 577;  13  Am. and  Eng. Ency. of Law,
p. 546, and notes.   (3)   The action of trespass does not
lie for waste committed on land by permission actually
in possession, though the possession be unlawful.   Haw-
kins v. Roby, 77 Mo. 140.

*D. W. Hill* and *E. R. Lentz* for respondents.

(1)   If a railroad company enters upon lands
without complying with the requirements of the statute,
it is liable in trespass or in ejectment.   Redfield on
Railways, p. 582, sec. 93; Ring v. Bridge, 57 Mo. 496;
Provalt v. Railway, 57 Mo. 262; Hutchinson v. Railway,
14 M. & W. 687; Graham v. Railway, 27 Ind. 260; Smith
v. Railway, 67 Ill. 191; Hibbs v. Railway, 39 Iowa 340;
Canquor v. Railway, 29 Minn. 256.   (2)   The statute
points out exactly what the railway company must do
to authorize it to enter upon land and take therefrom
material for the construction or repair of its road.   R.
S. 1899, sec. 1058.   There is no pretense here that de-
fendant complied with this statute.   Defendant having
entered without compliance with the statute is a tres-
passer.   (3)   The court properly instructed the jury
that the measure of plaintiff's damages is the value of

the sand and soil dug up, taken and carried away by the defendant from the land of the plaintiff, as declared in the first instruction given at the request of plaintiff. Revised Statutes 1899, sec. 4572; Mueller v. Railway, 31 Mo. 262; Flint v. Railway, 38 Mo. App. 94; Williams v. Railway (R. I.), 45 Atl. Rep. 578; Meriweather v. Bell (Ky.), 58 S. W. Rep. 987. (4) Instruction 2, asked by defendant, was properly refused by the court. There is no evidence in this case to show that defendant entered plaintiff's land under a license. Even if the conversation had between Sullivan and plaintiff Cox can be construed to amount to a license, yet the evidence clearly shows that that license was revoked before defendant entered plaintiff's land at all, and therefore defendant had no right to enter the land at all, and when it did it became a trespasser and is liable as such. The authorities are agreed that a license may be revoked at any time before it is acted upon. Randolph on Eminent Domain, sec. 131; Turner v. Stanton, 42 Mich. 506; People v. Goodwin, 5 N. Y. 568. (5) Under the statute it was the duty of the court to render judgment for three times the amount of the damages as ascertained by the jury, and the court erred in overruling plaintiff's motion in that respect. The court had no discretion in the matter. R. S. 1899, sec. 4572; Withington v. Hildebrand, 1 Mo. 280; Seaton v. Railway, 55 Mo. 416; Wood v. Railway, 58 Mo. 109.

### STATEMENT.

The plaintiffs are husband and wife and are joint owners of the north half of the northeast quarter of section 20, township 23, north of range 5 east, situated in Butler county, Missouri. In 1901 and 1902 the defendant railroad company, in constructing its line of railroad from Mingo, Missouri, to Pocahontas, Arkansas, ran through plaintiffs' land. Beginning on April 25, 1902, and continuing until the twenty-fifth day of July,

of the same year, the defendant entered upon plaintiffs' above-described land and removed therefrom thirty-five hundred carloads of sand for the purpose of resurfacing its track.

The petition alleges that the defendant "did, unlawfully, and against the wishes and protests of these plaintiffs, and without lawful authority so to do, enter upon plaintiffs' land, described as aforesaid, and between that time and the twenty-fifth day of July, 1902, with steam shovels and other appliances, dig up, take and carry away from said land, three thousand five hundred carloads of sand, soil and gravel then and there being on the said land, of the value of one thousand five hundred dollars. That at the said times the defendant had no interest in or right to the said sand, soil or gravel so by it dug up, taken and carried away from the said land."

The answer was a general denial and the following affirmative defense:

"Further answering, defendant says that I. M. Dittonhoefer was the original contractor for the building and completing of its railroad and the said Dittonhoefer by subcontractors and agents, bought from the plaintiffs the privilege of entering their lands and taking earth therefrom, and agreed to pay therefor at the rate of $20 per acre for each acre of land so entered; that six and eighteen one-hundredths acres were so entered by said contractor and his agents and subcontractors, and that $20 has been paid on the account thereof, and that $103.60 remains due and unpaid by said contractor; that the same was repeatedly tendered to said plaintiffs and so defendant says that it committed no trespass upon plaintiffs' land, nor did it enter said lands, nor was said lands entered with the knowledge or consent of defendant; but that said entry was made by the said I. M. Dittonhoefer, the original contractor, and his agents and subcontractors independent and under the contract aforesaid, and again prays judgment."

The evidence shows that Dittonhoefer was the orig-

inal contractor for the construction of the road and that he sublet a portion of the road to the Quigley-Keough Track Laying Company, including the part that ran through plaintiff's land. The work of the latter company was not satisfactory and it was taken over by Dittonhoefer. The Quigley-Keough Track Laying Company bought the privilege of taking sand from one acre of plaintiffs' land and paid twenty dollars therefor. This transaction, however, has no bearing on the issues of this suit further than to show that the contract was made and executed by the track laying company. The plaintiffs' evidence shows that they resided upon the land and, against their will, the defendant, through Dittonhoefer, entered upon the land and removed therefrom thirty-five hundred carloads of sand between April 25, 1902, and July 25th, of the same year, against the protests of both plaintiffs and in defiance of repeated verbal and written notices to defendant to get off the land and cease removing the sand.

L. F. Nickey, a witness for plaintiff, after qualifying to testify in respect to the value of the sand, testified as follows:

"Q. Now, do you know the value of such sand per cubic yard?"

Mr. Orchard: "No, if the court please, I object to that, because it is irrelevant, immaterial and incompetent; and because it is not the proper element of damages—it is not the proper measure of damages."

The Court: "I think that is right—I think the proper element of damages is the difference in the market value of this property before the sand was taken away and afterwards. I will overrule the objection.

Mr. Orchard: "Defendant excepts.

"Q. What is your answer? A. What was the question?

"Q. Do you know the value of such sand per cubic yard? A. It is selling from ten to twenty cents—I have paid that for sand."

Other witnesses, over the objection of defendant, were permitted to testify in respect to the value per cubic yard of the sand taken from plaintiffs' premises.

The evidence is that a car will contain from nine to twelve or fourteen cubic yards of sand.

G. H. Sullivan, who represented Dittenhoefer in respect to the alleged contract with plaintiff G. T. Cox to let defendant have the sand, stated:

"I told Mr. Cox that we wanted to get some sand off of his land across the track from his house, and asked what he would charge us per acre. Mr. Cox wanted to know how much land we would take. I told him there was a sand ridge, about ten or twelve feet high in the middle, running part way across the cleared piece, but that I could not tell how deep the sand was, nor how deep we could go without striking water; and that therefore I would be unable to tell how much land we would want. He told me he had sold one acre of this land to the Quigley-Keough Track Laying Company, and that they paid him $20 for the acre; we could have what land we wanted for the same price. I tried to beat him down to $15 per acre; he refused to take that, but said we could have what land we wanted at $20 per acre and not one cent less. I then agreed to pay him that price. Mr. Harve Johnson, the agent of the company at Poplar Bluff, was present at my request when this contract was made, and heard the entire conversation."

Harve Johnson, a witness for defendant, said he was present when the contract between Cox and Sullivan was made, and in respect thereto testified as follows:

"Q. I will ask you to state to the jury in your own way what took place between them? A. The conversation occurred up there at the south end of the cut where the Memphis railroad is; Mr. Cox, Mr. Sullivan and myself were there; there was an agreement between Sullivan and Cox about the use of some land, or sand

down here about Harviell on some of his land; the contract price was $20 per acre.

"Q. The contract price was $20 per acre? A. Yes, sir.

"Q. Was there anything said about how much? A. I inferred from the conversation that the railroad company could have what it wanted.

"Q. That the railroad company could have all it wanted? A. Yes, sir.

"Q. At $20 per acre? A. Yes, sir.

"Q. They agreed there that evening? A. Yes, sir; that was the agreement, when Mr. Cox left there, and then Sullivan and I walked on down to the depot."

On a previous trial Sullivan, in respect to the agreement with Cox, said: "We will go on to this piece of land and have what amount we wanted for $20 per acre—you understand, if any damage was done to the land from where we did not take the sand, we were to pay Mr. Cox for the actual damage to any crops or other damage to his land." Sullivan testified that he had the land from which the sand was taken surveyed and that there was about six acres of it, and that he tried to get Cox to accept pay for it at twenty dollars per acre but he refused to receive the money.

On cross-examination, Cox testified, in regard to the contract for the sale of the sand, as follows:

"Q. (By Mr. Orchard.) You say you had no authority to act for your wife in this matter? A. No, sir.

"Q. None at all? A. No, sir.

"Q. Then, when you testified a year ago, that you was acting for her, you testified to something that wasn't true, did you? A. There is one thing, I want to make an explanation about—Mr. Sullivan came to me here at Poplar Bluff, and made a proposition very unexpectedly to me. He says, 'I want the amount of two acres wide across your piece of land,' and I says, 'what do you want with it,' and he says, 'we are going to put

in a depot and also excavate that ridge there level with the roadbed;' and I studied a minute and says, 'I will take $20 per acre for that strip of land there, under the condition you maintain a depot there;' and he went to work down there on the right of way, and put in a steam shovel; and they went and cut more than 1,200 feet from the right of way line, right out through the middle of my farm, and I could not stop them; and as I said before, my wife knew nothing of it, and it came up unexpectedly to me.

"Q. You were very much surprised at the conversation you had with him, wasn't you? A. No answer.

"Q. Now, is it not a fact that you made a contract with Mr. Sullivan down here in this town, and sold him what sand he wanted for $20 per acre? A. I made a contract for a two acre strip.

"Q. Under that contract he went there and went into possession of this land, didn't he? A. As I said just now, they started to cutting on the right of way, and then kept going on.

"Q. Under that contract, they went on the other land, didn't they? A. I could not stop them.

"Q. Now, answer my question, under that contract you made here in town, he took possession of that land, didn't he? A. Sir?

"Q. Under that contract you made here in town with Mr. Sullivan, he took possession of that land, didn't he? A. He went there on to the right of way, and cut across the line and kept on cutting.

"Q. That was under the contract, in which you agreed to sell him what land he wanted there at $20 per acre? A. I agreed for him to have a strip there to the amount of two acres wide.

"Q. Where was that contract made? A. Up here at the cut.

"Q. Who was present? A. Mr. Sullivan and myself, and there was a lot of men there working on the cut.

"Q. Was Harve Johnson there? A. Yes, sir; I think so.

"Q. They sent deeds down here to you to sign up for this land, didn't they? A. They sent three different deeds.

"Q. They sent three different deeds? A. Yes, sir.

"Q. You never, at any time claimed to them when they sent those deeds, that you never sold them this land; did you? A. Sir?

"Q. You never had any time claimed to them, when they sent you those deeds, that you never sold them this land, did you? A. No sir; I didn't—only claimed to the contract of two-acre strip. They first sent a deed for one acre, and then for two acres, and then for six acres.

"Q. They sent you the money to pay for six acres after their work was done, didn't they? A. Their attorney, Mr. Phillips here, offered me the money for six acres and a little over.

"Q. Yes, sir; and asked you to sign a deed for it? A. Yes sir.

"Q. Is this the deed they offered you to sign? (Hands witness a deed.) A. Yes, sir; I think it is.

Henry Dees, a witness for defendant, testified that he represented defendant and was present when H. N. Phillips presented a deed for the six acres to Cox to be executed by plaintiffs, and that Cox made no objection to the deed, said it was all right but he wanted to see an attorney before signing it.

Henry N. Phillips, who at the time also represented the defendant and who was present and heard the conversation to which Dees testified, said: "I remember Mr. Cox and Mr. Sullivan, and I believe Mr. Dees, came to my office, and Mr. Sullivan had a deed and a couple of checks; one for $40 and the other for $63.60, if I remember correctly; and they were tendered to Mr. Cox,

and he was asked to sign the deed to some land, the exact description of which I don't remember. And Mr. Cox refused to sign it—there was some talk about it—a good deal of talk—I don't remember it right now, it has been nearly two years, that is about my recollection of it.

Witness also testified as follows:

"I will ask you if you had any conversation with Mr. Cox about it? A. After that time, I tendered Mr. Cox the same checks and he refused to sign the deed, and I returned the checks and the deed to the company.

"Q. What did he say about not signing the deed? A. Well, if I remember correctly, he stated that he didn't want to sign it until he consulted his attorney; he never agreed with me, that I remember, to sign the deed at all."

The court instructed the jury for plaintiff as follows:

"1. The court instructs the jury that, if you believe and find from the evidence that the defendant, by its servants, agents, employes and officers, without the consent or authority of Mrs. S. J. Cox and without the consent of G. T. Cox, on or about the twenty-fifth day of April, 1902, entered upon their farm and between that date and the twenty-fifth day of July, 1902, without such consent or authority, dug up, took and carried away from said farm, sand, soil and gravel, then and there being on said land, then your verdict must be for the plaintiffs and in such sum as you may believe from the evidence the reasonable market value, for any purpose, of such sand, soil and gravel to have been at the place where taken from, not to exceed $1500.

"2. The court instructs the jury that although you may believe and find from the testimony that the plaintiff G. T. Cox, did have a conversation with the witness, Sullivan, relative to the taking of said sand from plaintiffs' land, as described by the said witness, and that no consideration was paid therefor, yet such conversation would amount to no more than a license to enter and take

the said sand from the said land, and the said plaintiff, G. T. Cox, might lawfully revoke said license at any time and thus terminate the defendant's right to take sand from the said land.    And if you believe and find from the testimony that at or prior to the time when the said defendant first entered upon the land of plaintiffs the plaintiff, G. T. Cox, did so terminate the said license and notified and requested the defendant, its officers, agents and servants to keep off and out of his premises, and that the defendant, by its officers, agents and servants thereafter entered upon the plaintiffs' land without the consent of the said plaintiffs and did dig up, take and carry away the said soil from the said lands as set out in the petition, then the plaintiffs are entitled to recover the reasonable value of the sand and soil so dug up, taken and carried away.

"The court instructs the jury that the law requires that all agreements for the sale of lands, tenements or hereditaments or an interest in or concerning them, shall be in writing; now, unless you believe and find from the testimony that plaintiff made a contract in writing by which he agreed to allow the defendant to enter and dig up, take and carry away the soil and sand from the said land, then the defendant would not be authorized to enter said land for the purpose of taking, carrying away the said sand and soil against the protest of the plaintiffs."

The following instructions asked by defendant were refused:

"2.    The court instructs the jury that this is a suit for trespass.    If you find or believe from the evidence that defendant entered plaintiffs' lands under a verbal contract, then no matter what the verbal contract was plaintiffs cannot recover in this case and you must find a verdict for the defendant, and this is the law of this case, even if the defendant has violated the terms of the contract, if there was one.

"3. The court instructs the jury that if you find that I. M. Dittenhoefer was the contractor for the railroad and his subcontractors or employees entered plaintiffs' land either under or without an agreement, defendant is not liable and you should find a verdict for the defendant."

The jury returned the following verdict:

"We, the jury, find the issues joined in this cause for plaintiffs and assess their damages at the sum of $1,500.

"JAMES H. SMITH, Foreman."

Defendant filed motions for new trial and in arrest of judgment, both of which were overruled, and appealed.

Plaintiffs moved the court to treble the damage assessed by the jury. The court overruled this motion and rendered judgment for the damages assessed ($1500) by the jury, from which action of the court plaintiff appealed.

BLAND, P. J. (after stating the facts).—1. Defendant contends that the court erred in admitting evidence in respect to the value of the sand, and in instructing the jury that the measure of damages was the value of the sand removed from the premises by the defendant. The statute, section 4572, R. S. 1899, on which the action is founded, provides: "If any person shall cut down, injure or destroy or carry away any tree. . . . or carry away any stones, ore or minerals, gravel, clay or mould or any ice or other substance or material being a part of the realty . . . . . . being on land not his own. . . . . the person so offending shall pay to the party injured treble the value of the thing so injured, broken, destroyed or carried away, with costs." The statute fixed the damages at treble the value of the thing removed from plaintiffs' land by the trespass. If the defendant was guilty of a willful trespass in entering plaintiffs' land, though the thing removed was sand, the defendant is liable for treble the value of the sand removed.

Mueller v. Railroad, 31 Mo. 262; Soulard v. St. Louis, 36 Mo. l. c. 553-554; Henry v. Lowe, 73 Mo. 96; Flynt v. Railway, 73 Mo. App. 94. The ordinary rule for measuring the damages to land caused by the digging up and removal of a part of the soil, which is the cost of replacing the soil removed or the difference in the value of the land before and after the removal, cannot be applied to actions brought on the statute for the treble damages. The cases of Bungenstock v. Drainage District, 163 Mo. 198, 64 S. W. 149; Bailey v. Gas Fixture Co., 54 Mo. App. 50, and Foncannon v. Kirksville, 88 Mo. App. 279, cited and relied on by the defendant were not brought on the statute, but were common-law actions where the damage sought to be recovered was for the trespass and damage to the freehold.

For the reason railroad companies are authorized by section 1058, R. S. 1899, to enter and take from any land in the neighborhood of their lines of railroad, gravel, stone, wood, water or other material necessary for the construction of their railroads, it is contended by defendant that it is not amenable to the penalty of treble damages, as provided by section 4572, supra. Section 1058 does not give an absolute or unrestricted right to railroad companies to enter upon the land of another for the purpose mentioned. It provides that before making the entry, the railroad company must agree with the owner as to the damages and if it cannot agree with the owner, then it must proceed to have commissioners appointed in the manner provided by the statute to appraise the damages.

Section 4575, chap. 60, R. S. 1899, provides that on the trial of any action brought on section 4572, of the same chapter, "If it shall appear that the defendant had probable cause to believe that the land on which the trespass is alleged to have been committed, or that the thing so taken, carried away, injured or destroyed, was his own, the plaintiff in the action or prosecution shall receive single damages only, with costs."

In Lindell v. Railroad, Co., 25 Mo. 550, the suit was brought on section 1 (substantially the same as section 4572, supra) of an act to prevent certain trespasses approved February 10, 1845. The facts were that the defendant entered upon the land of the plaintiff and commenced cutting timber therefrom for the construction of its road and then applied to a justice of the peace for the appointment of commissioners to appraise the damages, who upon their own view, made after the timber had been cut, and portions of it removed, appraised the damages at $1100 and made out their report in writing. On this state of facts the court said it was of the opinion that the defendant had probable cause to believe that the timber taken was its own and under the fourth section (the same as section 4575, supra) plaintiff was entitled to single damages only. The Hannibal & St. Joseph Railroad Company, by section 2, of the amended act incorporating it (Laws 1853, p. 321) was authorized to take from any land in the neighborhood of its line of railroad, earth, gravel, stone, wood, water or other material necessary for the construction and operation of its road, paying, if the owner of the land and the company could agree, the damages, if they could not agree, the section provides for the appointment of commissioners by a justice of the peace to appraise the damages upon their own view of the grounds and of the wood, earth, stone or gravel which had been taken thereform. This section authorized the Hannibal & St. Joseph Railroad Company to enter the land of another for the purposes mentioned, in advance of any agreement with the owner of the land or the appointment and report of appraisers, if no agreement could be made with the owner. Leary v. Railroad, 38 Mo. 485.

The statute (1058, supra) following the requirements of section 21, article 2, of the Constitution, provides that the damages must be ascertained by agreement with the owner or by appraisement by commissioners before the company is authorized to enter upon the

land of another for the purpose of removing material therefrom to be used in the construction of its road. The ascertainment of the damages is a prerequisite to its right to make the entry and if it makes the entry and removed material without agreement of the owner or without having the damages appraised by commissioners, it would be guilty of a willful trespass and be liable for treble damages as provided by section 4572, supra. Ring v. Bridge Co., 57 Mo. 496.

G. T. Cox swore that he agreed to let defendant have two acres of land in a narrow strip, running across his land (forty acres) adjoining the railroad company's right of way, for twenty dollars per acre and in consideration that the railroad company would erect and maintain permanently a depot at this place. Defendant's evidence is that G. T. Cox agreed to let the defendant have all the sand it wanted from his premises at twenty dollars per acre and that it took the sand relying on this contract; that nothing was said about the depot. There is a wide discrepancy as to the terms of the contract, but none in respect to the fact that a contract of some kind was made to let defendant take sand off of plaintiff's premises. If the defendant had probable cause to believe that it was authorized, under the contract, to enter the premises of plaintiffs and take the sand, it was not a willful trespasser and is not liable for treble damages, but for single damages only. Plaintiffs are joint owners of the premises but it does not appear from the evidence that Mrs. Cox was a party to the contract whatever it may have been. It may be said that G. T. Cox, her husband, was her authorized agent to sell the sand to the defendant, if so it ought to be shown as it cannot be presumed. His agency may be shown by direct evidence or from such facts and circumstances as will warrant a reasonable inference that he was authorized to act for his wife in a sale of the sand. If G. T. Cox's contract was as contended for by defendant and he had authority from his wife to make it, defendant had probable cause

to believe it had a right to enter plaintffs' premises and take the sand and is liable for single damages only, and plaintiffs could not, by subsequent notice to defendant to get off the premises and stop taking the sand, convert what was originally an innocent trespass into a willful one, unless, as plaintiffs' evidence tends to show, sand was taken from a portion of the premises not included or intended to be included in the contract.

The second and third instructions given for the plaintiffs should not have been given. Defendant did not set up title for the premises from which the sand was taken but claimed the right to take the sand under a contract to pay twenty dollars per acre for whatever sand it might take from plaintiffs' land. The contract did not give defendant an interest in the land, nor does the statute (section 1058, supra) contemplate that the railroad company shall acquire an interest in the land. The right given by the statute is a mere privilege to enter upon and remove material from the land in the construction of its road. We cannot preceive that a contract for this privilege need be in writing. If, therefore, the verbal contract was as testified to by Sullivan and Thompson, it gave the defendant right to enter the land and take sand therefrom and it was not in the power of the plaintiffs to revoke the contract by giving the defendant notice to get off the premises.

Defendant's refused instructions do not correctly state the law. The controlling question in the case is whether or not defendant was a willful trespasser in entering and taking sand from plaintiffs' land. If G. T. Cox was authorized to act for his wife and made the contract as testified to by Sullivan and Thompson and defendant entered and took the sand under that contract, it was not a trespasser at all and is liable for the contract price of the sand only, and this is so, notwithstanding plaintiffs notified defendant to get off the premises after it had commenced to remove sand therefrom. On the other hand, if the contract was as testified to by Cox,

then the defendant did not have probable cause to believe it had a right to the sand and is liable for treble damages.

The judgment is reversed and the cause remanded. All concur.