James L. and Martha L. HAYDEN, Plaintiff-Respondent,

v.

GRAND RIVER MUTUAL TELEPHONE CORPORATION, Defendant-Appellant.

No. 25113.

Kansas City Court of Appeals.

Missouri.

April 7, 1969.

Phil Hauck, Pickett, Andereck & Hauck, Trenton, for defendant-appellant.

Larry L. Zahnd, Maryville, for plaintiff-respondent.

SPERRY, Commissioner.

This is an appeal by defendant from a judgment against it for actual damages for the unlawful taking of a telephone line right of way across plaintiffs' property, in the sum of $600.00, and for punitive damages in the sum of $700.00.

In 1962 plaintiffs acquired the title to an improved rectangular tract of land, 11 rods east and west and 10 rods north and south. It is located at the junction of Route A and Highway 71, near the village of Pumpkin Center, in Nodaway County, Missouri. Defendant is a mutual telephone corporation, and operates an extensive telephone business in that area. It possessed the

power of eminent domain but instituted no legal proceedings herein prior to its appropriation of plaintiffs' property, without their knowledge or consent.

In their petition plaintiffs described the various acts which were committed by defendant, and stated, in paragraph four thereof that, by reason of the "acts, trespasses and doings" of defendant, plaintiffs have been damaged. In paragraph five they prayed for actual damages in the sum of $2500.00, and for punitive damages in the same amount. In paragraph four of their second count they allege that the pole, aerial line and cable of defendant remain on the land and "do continue to trespass" upon their property, and that they have no adequate remedy at law. They prayed that defendant be perpetually enjoined from maintaining these facilities and that, by mandatory injunction, defendant be ordered to remove them from their land.

■ Defendant filed amended answer by which it admitted construction and maintenance of these facilities. It pleaded necessity for their construction and maintenance, that it was necessary for it to take, have and acquire a perpetual easement of right of way over the lands here involved for its purposes, and for ingress and egress therefrom. It prayed that these lands be and stand condemned for such purposes, that commissioners be appointed to assess the damages due plaintiffs *or that same be determined by a jury,* and that the court enter its decree of condemnation together with an easement. Defendant, in its brief, argues that this is an action for reverse condemnation. That contention is denied. Plaintiffs elected, as they legally could do, to sue for trespass.

The undisputed evidence is to the effect that plaintiffs paid $3000.00 as consideration for the deed to this property. When purchased there was a wooden structure located thereon, 46 x 54 feet in size. Plaintiffs raised the building and made two floors in it. They also installed water and a cooling system. They adapted it so that it was suitable for, and used for, the growing of pullets, as an adjunct to their business, carried on at another farm, producing eggs. The facility was suitable for housing 10,000 pullets and they raised pullets therein for others on a "custom" basis, as well as for their own purposes.

Defendant's evidence was to the effect that the reasonable market value of the property, prior to the taking in August, 1965, was $6500.00 and that, after the taking, it was $6000.00; that the damage suffered was $500.00. Three witnesses so testified.

■ Plaintiffs offered the testimony of qualified witnesses on values and damages. Mr. McGuiness stated that the fair market value of the property, prior to its invasion by defendants, was $8500.00; that its value after the tree was cut was $7900.00; that after the cable was laid, it was $7650.00; that the loss which was caused or would be caused by an easement, was $3000.00; Mr. Hayden valued the land prior to the taking at $11000.00. He stated that after the tree was cut, it was worth $10200.00; that after construction was finished, the value was $9900.00; and that, considering the taking of the proposed easement, the value was $7000.00. Mr. Bird stated the value before invasion was $10000.00; that, after installation of the facilities mentioned herein, the value was $9250.00; that, considering the damage caused by the proposed easement, it was worth $8300.00. Defendant moved to strike this testimony, and that of Mrs. Hayden who also gave similar testimony, because it compounded the elements of damage and did not constitute the true measure of damages. It does not complain that the judgment for actual damages is excessive. This motion was properly denied.

■ The above testimony was related to the value of the real estate immediately

prior to the trespass and its value immediately thereafter. The court's instruction pertaining to the measure of damages is an M.A.I. The verdict was for $600.00, which is but $100.00 in excess of the $500.00 which all of defendant's witnesses stated it to be. It was substantially less than that fixed by plaintiffs' witnesses on this issue. Defendant does not complain that it is excessive and we could not say that it is. That point is ruled adversely to defendant's contention.

It was not disputed that defendant trespassed on plaintiffs' property outside of and beyond the borders of the 10 foot right of way which, its evidence showed, it needed and which right of way was granted to it under its amended answer and counterclaim. The evidence was clearly to the effect that defendant's employees cut a twin elm tree belonging to plaintiffs, and located beyond the confines of the right of way it sought and obtained. It was shown that the tree furnished shade for plaintiff and workmen when they debeaked and decombed the pullets during the hot weather, and also served to partially prevent erosion in a deep ravine on the property.

Defendant admitted that it instituted no legal proceedings to obtain a right of way across this real estate; that plaintiffs owned this property at all times pertinent to this case; and that it had no oral or written permit from plaintiffs to go on the property or to establish and install its facilities. Its only excuse for its conduct is that one of its employees obtained a written "permission" signed by one to whom he was referred by the postmaster at Pumpkin Center. Defendant's evidence established that its right of way employees were experienced in searching title records and in obtaining rights of way. Mr. Hayden stated that he had, prior to the taking, during negotiations in connection with the taking by defendant of some of plaintiffs' other lands, told defendant's right of way man that he owned this property and would expect to be paid damages if the line ran across it. He stated that defendant's agent

indicated that the line would not cross it. Mr. Hayden learned of defendant's action after he returned from a vacation trip and inspected his property.

The court gave judgment for actual and punitive damages in accordance with the jury verdict and denied equitable relief as prayed in count two of plaintiffs' petition.

Defendant complains that the court erred in permitting plaintiffs to present evidence of and to submit their cause simultaneously for both compensatory damages and for punitive damages, because their remedy was only for the value of the land "wrongfully appropriated".

Here plaintiffs sued in trespass. They prayed for actual and punitive damages and for judgment ordering defendant to remove its installations from their land. In Beetschen v. Schell Pipe Line Corp., Mo.App., 248 S.W.2d 66, 70, the court said:

"* * *

"Under the Constitution of 1945, Art. I, Section 26, private property cannot be disturbed nor can the proprietary rights of the owner therein be divested until the damages are ascertained and paid to the owner or paid into court for the owner. A corporation which ignores the statute and the Constitution and makes an entry upon the land of a private citizen without agreement with the owner or without having the damages appraised by commissioners is guilty of a wilful trespass. Cox v. St. Louis, M. & S. E. R. Co., 111 Mo.App. 394, loc. cit. 408, 85 S.W. 989.

"[3] In such case the aggrieved property owner has an election of remedies. He may proceed by way of injunction to restrain the installation, MacMurray-Judge Architectural Iron Co. v. City of St. Louis, 138 Mo. 608, 39 S.W. 467; Carpenter v. City of St. Joseph, 263 Mo. 705, 174 S.W. 53; or he may sue in ejectment, Tooker v. Missouri Power &

Light Co., 336 Mo. 592, 80 S.W.2d 691, 101 A.L.R. 365; or he may avail himself of R.S.Mo.1949 § 523.090; or he may maintain a common law action for damages. 30 C.J.S., Eminent Domain, § 394, page 105.

"If he sues for damages, he may in a proper case proceed upon the theory of trespass and sue for actual damages, 30 C.J.S., Eminent Domain, § 400, page 118, and when the facts warrant it recover punitive damages, or he may waive the tort and sue for the compensatory damages to which he would have been entitled if condemnation proceedings had been instituted prior to the entry. Doyle v. Kansas City & S.R. Co., 113 Mo. 280, 20 S.W. 970; Webster v. Kansas City & S.R. Co., 116 Mo. 114, 22 S.W. 474, loc. cit. 475. * * *"

The court further said that if plaintiff sues for just compensation his theory is that of acquiescence in the taking, and he has but one action in which he must recover all damages, past, present, and prospective.

At page 71 the court stated that where the character of trespass is such that it *need not be permanent* the landowner may maintain successive actions for the continuation of the trespass each day giving rise to a fresh cause of action.

In that case defendant, in 1928, had filed condemnation proceedings seeking an easement for the construction and maintenance of a pipe line, and the right to fence the property. However, before judgment, defendant filed an amended petition wherein it did not seek the right to fence. Some twenty years later the corporation determined to fence the easement. In a search of the files of the case the attorney found only the original petition and not the amended petition. Upon the attorney's advice, the corporation proceeded to fence the property and plaintiff landowners filed suit for trespass. They sought actual and punitive damages. Actual damages of $157.50, and punitive damages of $2750.00 were allowed. The court of appeals affirmed the judgment as to actual damages but ordered remittitur of $2250.00 of punitive damages.

The court ordered the cause transferred to the Supreme Court where a new opinion was prepared. The decision reached was identical with that reached by the court of appeals. The Supreme Court, 363 Mo. 751, 253 S.W.2d 785, 786, stated that *defendant contended* that the trial court erred in holding and instructing the jury that this is an action for a temporary trespass; that since defendant possessed the power of eminent domain and could have condemned the right to fence, and that, although having appropriated that right without authority, the fencing is permanent and, therefore, there could be no liability for punitive damages and, necessarily, the landowner is bound to seek his entire recovery in one action for all of the damages sustained.

Defendant here argues that, since it could have legally condemned the right of way and would have received all that it did receive by the court's order in this case, it should not suffer punitive damages; that such would not have been levied in an ordinary condemnation case. It further reasons that, since the above is true, it is somehow unfair for it to suffer such punishment here where it did not resort to condemnation proceedings. It cites no decision so holding. We have found none.

Defendant cites 22 Am.Jur.2d, section 238, Exemplary or Punitive Damages, where it said:

" * * * Exemplary damages are not a favorite of the law, and it has been said that the power of giving them should be exercised with great caution and that they are properly confined within the narrowest limits. They will not be allowed where their infliction will impede,

rather than promote, the public good or where they will operate to coerce one into doing what he has a right to refuse to do."

At par. 236 of the same authority it is stated that exemplary damages are given because of the *wanton, reckless, malicious* or *oppressive* character of the acts complained of.

Plaintiffs cite Jasper Land & Improvement Co. v. Kansas City, 293 Mo. 674, 239 S.W. 864. There Kansas City had condemned certain lands of plaintiff for public use. The proceedings dragged out but, eventually, terminated and Kansas City paid the full amount finally adjudged to be due, less taxes becoming due on said land during the pendency of the proceedings. The court held that Kansas City did not obtain title to the property until the amount adjudged to be due was paid; that, during the pendency of the proceedings and, until compensation was paid to plaintiff, the land was subject to taxation. Here compensation has not yet been paid to plaintiffs.

Applying that principle to the situation here, it is apparent that, when the unlawful invasion occurred, the property belonged to plaintiffs and defendant had no legal right to cut a tree thereon, nor the right to dig ditches, lay cable, or erect poles and wire. After it was called to account in court, defendant asked the court to do for it what could have been done, at its instance, long before. It now says its sins should be forgiven because, after their commission, it had been determined that it had a right, at all times, to have the property condemned for a public use. It has violated the Constitution. It has wantonly and recklessly taken private property without the knowledge or consent of its owners. It has failed and continues to fail and refuse to pay just compensation, and it has committed a wilful trespass. Exemplary damages may be adjudged. 30 C.J.S. Eminent Domain § 447, page 615. It now says its sins are washed away in the purifying waters of the law, into which it was dragged by its

heels on complaint of the outraged landowners.

■ The question of whether the taking was of a permanent character is not before us. The court's judgment in that respect is not challenged by plaintiffs. In the Beetschen decisions, that question was raised by the defendant in an effort to avoid future damages for continuing to maintain its fence. That point was ruled by both the Court of Appeals and the Supreme Court adversely to defendant's contention. Both courts upheld judgment for punitive damages (with reduction). Neither held, nor intimated that if the taking had been for a permanent purpose, although unlawfully and without process of law until suit was instituted by plaintiffs, there would have been no liability for punitive damages. Such a ruling would be without precedent known to us; and we think that it would not have been in the public interest to approve the taking by force of that which might, after trial, be awarded. Defendant also argues that its conduct does not make it liable for punitive damages because it had, on two prior occasions, amicably agreed with plaintiffs as to damages and that, on this occasion, it had no reason to believe that plaintiffs owned this land. In the Beetschen case, defendant sought to excuse its wrongful conduct because it failed to find existing legal documents which established that it did not have the right to fence the property. The court said that it had such knowledge and held defendant liable for actual and punitive damages. Mr. Hayden stated that he told defendant's agent that he owned the property and would expect to be paid damages if defendant sought to cross it with a telephone line. Defendant believed it had made necessary investigation by inquiring concerning title from the postmaster of Pumpkin Center. Its conduct was wanton, and reckless, to say the least.

■ Defendant complains of the introduction into evidence of a letter written by plaintiffs' attorney to defendant notify-

ing it to remove its installations from plaintiffs' property. In its first answer filed, defendant pleaded estoppel. In any case, that was a defense which defendant might, under proper circumstances, interpose. Furthermore, defendant offered testimony to the effect that negotiations were had between its agent and Mr. Hayden, prior to the filing of the suit, wherein defendant offered plaintiffs $100.00 damages in settlement. If the installations had been removed the damages would have been mitigated. Plaintiffs may not be criticized for having asserted their unrestricted claim to title either in writing or verbally.

■ Defendant complains of the giving of instruction No. 8 which is MAI 32.11. The complaint is that there is no provision made for the finding of a verdict for defendant. Plaintiffs were entitled to a verdict for actual damages under the state of the pleadings and defendant's evidence. Ritchie v. State Board of Agriculture, Mo. App., 297 S.W. 435, 438. Instruction No. 2 directed a verdict for plaintiffs for the difference between the fair market value immediately prior to the taking, and its value immediately thereafter. The two instructions in that respect are harmonious. No. 3 gave a proper definition of "fair market value". No. 4 properly authorized a verdict for punitive damages upon finding that the taking was wilful, wanton or malicious. No. 5 defined "malicious". No. 8 merely told the jury how to find the verdicts as previously authorized. No error was committed thereby.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

HOWARD, P. J., and CROSS, J., concur.

SHANGLER, J., concurs in result.