Anthony D. KEEVEN and Martha Ann
Keeven, Respondents,

v.

ST. CHARLES COUNTY UTILITIES
COMPANY, INC., Appellant.

No. 36933.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Sept. 28, 1976.

Claude C. Knight, Hannegan, Londoff & Knight, St. Charles, Lowell L. Smithson, Spencer, Fane, Britt & Browne, Kansas City, for appellant.

Rollin J. Moerschel, Niedner, Moerschel, Nack & Ahlheim, St. Charles, for respondents.

NORWIN D. HOUSER, Special Judge.

Anthony D. Keeven and wife Martha Ann filed suit against St. Charles County Utility Company, Inc. in Count One for damages, alleging trespass and unlawful entry without their consent and permission upon their 100-acre tract in St. Charles County, cutting down trees, opening a trench, installing a sewer line and operating vehicles, equipment and machinery to their damage, and in Count Two for injunctive relief to compel removal of the sewer line and restrain future entry upon and further damage to their land. The utility company filed an answer denying trespass, pleading permission and consent to the entry, denying any intention to re-enter the land and continue the work, and a counterclaim invoking its power of eminent domain, to acquire by condemnation a 20-foot-wide easement right of way across the 100-acre tract for sewer line uses and purposes.

There is no controversy over the fact that the utility, through its contractor, entered Keevens' land, felled trees, cut a trench and laid a 12-inch sewer line through all but a few feet of the 1,482-foot strip previously platted, before stopping the work and leaving the land on orders of Anthony D. Keeven, and that this work was done without the utility company first having obtained a signed easement document from landowners. The parties agreed that conversations and negotiations over a period of many months were had between Mr. Keeven and his attorney, and Mr. Patty, president of the utility company, respecting the installation of a sewer line across this tract; that the utility entered the property, surveyed and set stakes a number of times, and at various stages of the negotiations proffered to landowners three easement forms for their signatures; that landowners declined to sign any of these documents.

Landowners introduced evidence that in these negotiations no final agreement had been reached; that no permission or con-

sent had been given by them to the utility company to enter the land and install the sewer line. The utility company, contra, introduced evidence that the entries of survey parties, for staking, etc., were understood by Mr. Patty to have been with the consent and permission of landowners; that Mr. Patty understood that a final agreement on an easement contract was reached in July, 1973 at the office of landowners' attorney, at which landowners were present, by the terms of which the utility would straighten two "dog legs" in the creek area, restore the land as adequately as possible by clearing debris, trash, rubbish and brush, remove rock, provide free connection fees for existing buildings on the land, assist in procuring an easement over adjacent land for better drainage of Keevens' land, and that the route of the line should be according to drawings the parties went over in the lawyer's office. After that meeting Mr. Patty asked for inspections of the property by and bids and estimates from two contractors reference rechanneling the creek, and in August or September, 1973 the utility restaked the route without objection of landowners. Mr. Patty understood that the work could proceed without an executed easement—that the utility had the consent and permission of landowners to go ahead—and that upon completion of the work to the satisfaction of landowners the latter would then execute a formal easement document. The utility company contracted for the work to be done. Mr. Keeven had told Mr. Ruff, former owner of the utility, "No problem. Come on through any time you want."

Landowners introduced extensive evidence of trespass; of damage to the land and the area adjacent to the trench, extending at places 100 feet on either side of the trench; strewing of thousands of rocks up to one foot in size on the land, whereby a total of four acres of the 100-acre tract was wasted for agricultural purposes or for use as a sod farm (Mr. Keeven's principal business). The utility company sought to minimize these damages and introduced evidence that it would have removed the rocks if its contractor had not been run off the

job. Evidence of $10,000 economic loss accruing to Mr. Keeven's sod business from the depredation of the land was introduced and later stricken, after which Mr. Keeven testified that the difference between the reasonable market value of the land before and after the trespass was the sum of $10,000. The utility, joining issue on the difference between the market value of the land before and after the taking, introduced expert testimony that the difference, not counting special benefits, was $850, but that special benefits to the land enhanced its value by $10,000.

In support of an award for punitive damages landowners introduced evidence that Anthony D. Keeven went on a hunting trip to Idaho, leaving his brother Frank in charge; that when Frank ascertained that the work had begun, and when the trenching machinery had progressed only about 100 feet into the tract, he requested of Mr. Patty that he stop construction, claiming no final agreement had been worked out, stating there was no easement right and that the contractor should get off the property; that Mr. Patty promised to go to the site and notify the contractor immediately to stop construction and get off the premises, but Mr. Patty did not do so; that three days later the line had progressed at least halfway across the land; that Frank Keeven again called Mr. Patty, who promised to go to the site and tell them to get off; that nevertheless construction continued, until Anthony D. Keeven returned and ordered the contractor off the premises. At this time only about 20 or 30 feet of pipe remained to be laid. There was evidence that at no time did Mr. Patty or Frank Keeven tell the contractor to shut down the job.

On the same day the jury returned its verdict the court entered an order of condemnation of a permanent easement over the land for the construction, operation and maintenance of the sewer line, and the right to possession upon payment of the "amount, if any, which may be assessed by the jury, this date, as actual damages."

*Landowners* offered Instruction No. 3 (MAI 9.02) directing the jury to award

landowners the difference between the fair market value of the whole property immediately before the taking and the value of landowner's remaining property immediately thereafter; Instruction No. 4 (MAI 16.02) defining "fair market value," and Instruction No. 6 (MAI 34.03) directing the jury, in determining the value of the remaining property, not to consider any general benefit conferred upon all property within useable range of the sewer system. Landowners also offered Instruction No. 5 (MAI 10.01 modified and MAI 16.01 combined) as follows:

"If you find the issues in favor of plaintiffs, and if you believe the conduct of defendant in appropriating plaintiffs' property was willful, wanton, or malicious, then in addition to any damages to which you find plaintiffs entitled under Instruction No. 3 you may award plaintiffs an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter it and others from like conduct.

"The word 'malicious' as used in this instruction does not mean with hatred, spite or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse."

No instructions were offered or given on the subject of trespass. The utility company offered no instructions.

Notwithstanding the lack of instructions on trespass, that subject was thoroughly argued to the jury. Landowners asked the jury to return a verdict for actual damages for trespass, "and also for the appropriation of the land," and for a verdict for punitive damages based on malicious acts of the utility company. Landowners argued that there was no agreement between the parties; that Mr. Patty failed to stop the operation and leave the land after promising to do so; that the utility company exhibited an absolute disregard for the property rights of others; that the land was damaged from the rocks; that 4 acres were destroyed. They asked for $10,000 actual damages for the trespass and wrongs done

and for the easement, and $25,000 punitive damages as a warning to others.

The jury returned a unanimous verdict for landowners, reciting that plaintiffs were entitled to both actual and punitive damages, and assessed actual damages in the sum of $4,000 and punitive damages in the sum of $30,000. Judgment was entered upon the verdict. Following the overruling of the motion for new trial the utility company appealed.

█ It was error to submit Instruction No. 3 on punitive damages in this submission on the issue of condemnation only, without any instruction on the law of trespass.

In *Beetschen v. Shell Pipe Line Corp.*, 248 S.W.2d 66, 70 (Mo.App.1952), this Court said:

"Under the Constitution of 1945, Art. I, Section 26, private property cannot be disturbed nor can the proprietary rights of the owner therein be divested until the damages are ascertained and paid to the owner or paid into court for the owner. A corporation which ignores the statute and the Constitution and makes an entry upon the land of a private citizen without agreement with the owner or without having the damages appraised by commissioners is guilty of a wilful trespass. *Cox v. St. Louis, M. & S. E. R. Co.*, 111 Mo.App. 394, loc. cit. 408, 85 S.W. 989.

"In such case the aggrieved property owner has an election of remedies. He may proceed by way of injunction to restrain the installation, *MacMurray-Judge Architectural Iron Co. v. City of St. Louis*, 138 Mo. 608, 39 S.W. 467; *Carpenter v. City of St. Joseph*, 263 Mo. 705, 174 S.W. 53; or he may sue in ejectment, *Tooker v. Missouri Power & Light Co.*, 336 Mo. 592, 80 S.W.2d 691, 101 A.L.R. 365; or he may avail himself of R.S.Mo.1949 § 523.090; or he may maintain a common law action for damages. 30 C.J.S. Eminent Domain § 394, page 105.

"If he sues for damages, he may in a proper case proceed upon the theory of trespass and sue for actual damages, 30 C.J.S. Eminent Domain § 400, page 118, and when

the facts warrant it recover punitive damages, or he may waive the tort and sue for the compensatory damages to which he would have been entitled if condemnation proceedings had been instituted prior to the entry. *Doyle v. Kansas City & S. R. Co.,* 113 Mo. 280, 20 S.W. 970; *Webster v. Kansas City & S. R. Co.,* 116 Mo. 114, 22 S.W. 474, loc. cit. 475.

"If he sues for the just compensation preserved to him by the Constitution for the taking of private property for public use, his theory is that of acquiescence in the taking, consent to the appropriation, and in that event he has but one action, in which he must recover all damages, past, present and prospective. * * *"

This analysis has been followed in subsequent appellate decisions. *Beetschen v. Shell Pipe Line Corp.,* 363 Mo. 751, 253 S.W.2d 785 (1952); *Twiehaus v. Wright City,* 412 S.W.2d 450, 453 (Mo.1967); *Hayden v. Grand River Mutual Telephone Corp.,* 440 S.W.2d 161 (Mo.App.1969); *Harris v. L. P. and H. Constr. Co.,* 441 S.W.2d 377 (Mo.App.1969).

"In adopting the theory of trespass [landowners did] not acknowledge the right of the corporation to appropriate, nor [did] they acquiesce in the appropriation. On the contrary they [protested] the taking, [and denied] the rights of the trespasser * * *." *Beetschen v. Shell Pipe Line Corp.,* supra, 248 S.W.2d l.c. 71. The utility company, denying the charge of trespass, defensively pleaded that it had the consent and permission of landowners to do these things, then took the initiative and availed itself of its right of eminent domain by way of counterclaim to obtain the desired easement rights. After the issue of condemnation was thus injected into the case landowners joined issue on the question of condemnation and introduced evidence not only on the issue of trespass but also evidence pertinent to the issue of condemnation. When it came to instructing the jury, however, landowners offered a verdict-directing instruction on the issue of condemnation and two other instructions relating to condemnation, but *failed to offer any instructions on the issue of trespass.* Landowners argued to the jury on both issues, condemnation and trespass, emphasizing that the only time they would be able to recover for the trespass itself, as well as for the easement rights, was in this verdict; that they had been wronged and were entitled to be paid not only for the permanent appropriation of easement rights, but also for the trespass, the ensuing damage to the trees, land, etc., and were entitled to punitive damages "to prevent somebody like that from carrying on this kind of conduct to others * * *."

 When landowners submitted Instructions Nos. 3, 4 and 6 on the issue of condemnation, and failed to offer instructions on the issue of trespass, they forfeited their right to recover punitive damages. Instructions Nos. 3, 4 and 6, relating solely to the condemnation issue, provided no basis for Instruction No. 5 on punitive damages. Under the pleadings the tort of trespass was the only possible basis for the claim of punitive damages. Instruction No. 3, (MAI 9.02) relating only to the issue of condemnation, provided no such basis. In condemnation landowners may recover "just compensation" under Article I, Section 26, Constitution of Missouri. This means "the full and perfect equivalent in money of the property taken, * * * no more." *City of St. Louis v. Union Quarry & Construction Co.,* 394 S.W.2d 300, 305[6] (Mo.1965). Just compensation under the Constitution contemplates actual, compensatory damages, but not punitive damages. By not requesting instructions on trespass landowners deprived themselves of any basis for the recovery of punitive damages. "It is a general rule that, in order to recover exemplary or punitive damages, actual damages must be shown, or there must be a basis for the recovery of compensatory damages, even though the elements otherwise authorizing the recovery of exemplary or punitive damages may exist. As it has been otherwise stated, expressly or in substance, exemplary damages cannot constitute the basis of a cause of action, but are merely incidental to the cause of action."

25 C.J.S. Damages § 118, p. 1121. The verdict and judgment for punitive damages cannot stand.

■ By their failure to go to the jury on trespass respondents, however, did not make a final, conclusive and binding election of remedies in the strict sense of the term, for all time, all purposes and all subsequent litigation. The record clearly shows that respondents had no intention to abandon their trespass claims. Although they failed to offer or request instructions on trespass they continued to press these claims, asserting them with vigor in argument, thereby substantially contributing to the return of the $4,000 and $30,000 verdicts. Their failure to offer instructions on trespass apparently was due to inadvertence, mistake or ignorance of the legal effect of that failure. They simply misconceived the proper procedure to lay the foundation for a supportable verdict for actual and punitive damages in trespass.

We are aware of the rule that " * * * where a party has a right to pursue one of two inconsistent remedies, makes his election, institutes suit and prosecutes it to final judgment, or receives something of value on the claim, he cannot thereafter pursue another and inconsistent remedy. *Tooker v. Missouri Power & Light Co.,* 336 Mo. 592, 80 S.W.2d 691, 101 A.L.R. 365; *Cowan v. Young,* 282 Mo. 36, 220 S.W. 869." *Pemberton v. Ladue Realty & Construction Co.,* 359 Mo. 907, 224 S.W.2d 383, 385[5] (1949). Respondents, however, did not prosecute the condemnation claim to final judgment. There has been no final judgment. Nor have respondents become finally entitled to something of value on that claim. (We are advised that they took down the $4,000 deposited in the registry of the court but that is not conclusive because they are subject to an order to restore that sum if final judgment goes against them.)

■ That respondents misconceived the proper procedure is not enough to prevent respondents on a new trial from pursuing their trespass claims in proper fashion. The following of a mistaken remedy (or procedure) is not the pursuit of an inconsistent remedy, so as to amount to an election. *Pemberton,* supra, 224 S.W.2d l.c. 385[5, 6]; *DeMott v. Great American Ins. Co. of New York,* 234 Mo.App. 31, 131 S.W.2d 64, 67[10] (1939); *State, at inf. of Dalton ex rel. Tucker v. Mattingly,* 275 S.W.2d 34, 39[5] (Mo.App.1955); *Autocar Sales & Service Co. v. Holscher,* 11 S.W.2d 1072, 1074[4] (Mo.App.1928); 28 C.J.S. Election of Remedies § 12 p. 1080; 25 Am. Jur.2d Election of Remedies § 22, p. 664. If in fact appellant entered the land, destroyed trees, cut a trench and installed its facilities without the knowledge or consent of the landowners and without process of law, as respondents claim, it would be a travesty of justice to deprive them of an opportunity to prove these facts on a new trial simply because they inadvertently failed to instruct on trespass at the first trial. On remand respondents are entitled to introduce evidence in support of their petition for damages for trespass, actual and punitive, and to offer instructions thereon.

■ Nor can the verdict for $4,000 actual damages stand, because of the confusing and improper manner in which this case was submitted and argued. As we have seen, landowners failed to offer, and the court did not give, instructions on the theory of trespass. Landowners offered and the court gave only instructions on condemnation. Nevertheless, landowners strenuously argued the trespass (events which took place prior to the "taking"), asking for actual damages done by the alleged unauthorized invasion of the land, destruction of trees, etc., and for punitive damages in connection therewith. Without the benefit of instructions on the law of trespass; without any guide or compass on the measure of actual damages for trespass; they were asked to respond to landowners' claims for actual and punitive damages for trespass. They were instructed on the law of condemnation, had before them an instruction on punitive damages, and were urged to award just compensation for the easement rights—the difference in fair market value before and after the taking. We cannot

ascertain how much, if any, of the $4,000 verdict was awarded for an unlawful trespass (not submitted by instructions) and how much was awarded under condemnation Instruction No. 3. This improper blending of the two causes of action of trespass and condemnation, without an instruction on the law of trespass, inevitably confused the issue, invalidated the $4,000 verdict and requires appellate intervention.

Accordingly, the judgment for $4,000 actual and $30,000 punitive damages is reversed, and the cause is remanded for a new trial.

If the pleadings and evidence at the new trial are essentially the same as on the first trial landowners may submit their case on the theory of trespass, for actual and punitive damages; the utility may submit its defense to the trespass claim on the basis of permission and license, and instructions on the condemnation issue should be given.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.