KENNETH BEETSCHEN and ALVERA BEETSCHEN, Respondents, v. SHELL PIPE LINE CORPORATION, a Corporation, Appellant, No. 43153— 253 S. W. (2d) 785.

Division Two, December 8, 1952.

752

*Charles M. Spence* and *Harold I. Elbert* for appellant; *Thompson, Mitchell, Thompson & Douglas* of counsel.

*Henry C. Stoll* for respondents; *Joseph Nessenfeld* of counsel.

BARRETT, C.—In this action for trespass the plaintiffs have been awarded $157.50 actual damages and $2750 punitive damages. The appeal has been transferred to this court by the St. Louis Court of Appeals (Beetschen v. Shell Pipe Line Corp., 248 S. W. (2) 66) and even though we may approve of that court's opinion and decision it is now the duty of this court to consider and determine the appeal anew. Const. Mo., Art. 5, Sec. 10; Sup. Ct. Rule 2.06; In re Adoption of Sypolt, 361 Mo. 958, 237 [786] S. W. (2) 193; In re Adoption of Duren, 355 Mo. 1222, 200 S. W. (2) 343.

The plaintiffs, Kenneth and Alvera Beetschen, are the owners of a home on Lot 64 in St. Ann, a city in St. Louis County. The admitted trespass to the plaintiffs' lot came about in these circumstances: The appellant, Shell Pipe Line Corporation, has a subsurface easement for its crude oil pipe line across the south ten feet of the plain-

tiff's lot. The easement for the pipe line was acquired in a condemnation proceeding in the United States District Court for the Eastern District of Missouri in 1928. In that proceeding, by amendment of its original petition, the Shell Pipe Line Corporation specifically stipulated that its pipe line would be laid at least two feet underneath the surface of the ground and would be so constructed and maintained as not to interfere with the cultivation or other use of the surface of the land, and "that petitioner and its successors in interest may have no right to fence said strip of land." And, in instructing the jury upon the measure of damages, the trial judge informed the jury that they should take into consideration the fact that the strip of land could not be fenced by the plaintiff or its successors. Despite its specific stipulation in the condemnation proceeding by which the easement was acquired and despite the fact, admitted in this proceeding, that it had no right to enclose the surface of the easement, the Shell Pipe Line Corporation, in 1949, constructed a six-foot steel and wire fence with gates, topped with three strands of barbed wire, enclosing the ten-foot strip on the plaintiffs' lot.

Even now the appellant does not claim that it had a right to construct the fence, and, while it seeks to palliate the fact, it does not attempt to justify its conduct in having done so. Its defense to the action and claim here is that the trial court erred in holding and instructing the jury upon the theory that this is an action for a temporary trespass. Its position is that it possessed the power of eminent domain and could have condemned the right to fence and having appropriated, without authority, that right, the taking or fencing is permanent and, therefore, there could be no liability for punitive damages and necessarily the landowner is bound to seek his entire recovery in one action for all the damages sustained. As a factual basis for its position the appellant claimed and proved that when the question of its right to fence arose in 1949 its representatives examined their files and did not find the amended petition in the original condemnation proceeding, and, relying upon the original petition and the decision of this court in its companion condemnation case of Shell Pipe Line Corporation v. Woolfolk, 331 Mo. 410, 53 S. W. (2) 917, in which it acquired the right to fence, the opinion was given that it also had the right to fence this easement. In these circumstances it is urged that the knowledge of its officers in 1928 that it had no right to fence could not be imputed to its officers and representatives in 1949, hence that it acted in good faith in constructing the fence and could not be guilty of conscious wrongdoing and, therefore, there was no basis for the submission of punitive damages.

The difficulty with this argument is that it ignores certain basic facts. In the first place the corporation as well as its employees necessarily had knowledge of the fact that the only interest the corporation could acquire in the ten-foot strip for the purpose of its pipe

line right of way was an easement. Const. Mo., Art. 1, Sec. 26; Brown v. Weare, 348 Mo. 135, 152 S. W. (2) 649; St. L., K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S. W. 192. An easement is a non-possessory interest in land (5 Restatement, Property, p. 2903) and does not include the right to fence, that right remains with the owner of the servient estate and he is not bound to permit the erection of fences. Sizer v. Quinlan, 82 Wis. 390, 52 N. W. 590; 22 Am. Jur., Sec. 3, p. 513; 28 C. J. S., Sec. 98(2)b, p. 783. The right to enclose an easement with a fence does not accrue by reason of the dominant owner's zeal or duty to protect the public, if that right is necessary or desired it must be acquired in an appropriate condemnation proceeding. Annotation 6 A. L. [787] R. (2) 205, 210; Aycock v. Houston Lighting & Power Co., (Tex.) 175 S. W. (2) 710.

 More important, however, is the basic fact of the condemnation proceeding itself in which the limited subsurface easement was acquired. Of course, in instituting, amending and prosecuting its condemnation proceeding in 1928, the corporation necessarily acted through its representatives as it did again in 1949 when the corporation constructed the fence. In that proceeding it could have acquired an easement to the surface use of the ten-foot strip, including the right to fence, but instead it voluntarily elected to acquire a subsurface easement with express reservations to the landowner (annotation 7 A. L. R. (2) 364; Shell Pipe Line Corp. v. Woolfolk, supra) and specifically stipulated that there was no right in the condemner or its successors to fence the easement. The purpose of its action in specifically amending the petition, no doubt, was to reduce the damages in the condemnation proceeding. But, regardless of the reason for its election and irrespective of the fact that it acted through different representatives or agents in 1928 and in 1949, the basic fact is that it is the corporate entity, the Shell Pipe Line Corporation, that has been invested with the right to exercise the power of eminent domain. R. S. Mo. 1949, Sec. 523.010. By reason of that fact the condemnation proceeding was instituted, amended and prosecuted to a conclusion in the name of the Shell Pipe Line Corporation and the title, right or interest condemned and acquired by reason of that proceeding, the specifically limited subsurface easement, vested in the Shell Pipe Line Corporation. The proceedings in the condemnation suit constitute the corporate entity's record and muniments of title, and those proceedings show the title to be an easement, as well as its quantity and quality, vested in the Shell Pipe Line Corporation. State ex rel. Campbell v. Brinkop, 238 Mo. 298, 307, 143 S. W. 444; 6A Fletcher, Cyclopedia Corporations, Sec. 2814, p. 295. Whatever its individual employees may have known or forgotten, either in 1928 or in 1949, the corporate entity of necessity had full knowledge then and now of its right, title and interest in the ten-foot strip, including the fact of no right to fence. Pentz v. Kuester, 41 Mo. 447. ''It requires no

citation of authority to show that a man can not question a title given by himself or hold possession of the land in the face of his own deed." Steele v. Culver, 158 Mo. 136, 138, 59 S. W. 67.

And so the corporation with full knowledge of its limited and restricted title trespassed and erected the fence. 10 Fletcher, Cyclopedia Corporations, Sec. 4893, p. 431; 36 C. J. S., Sec. 19, p. 669; 1 Restatement, Torts, Secs. 160, 161. The erection of the fence was certainly intentional, it was a wrongful act and was done without just cause or excuse and was therefore wilful, and warranted the submission of punitive damages. Cox v. St. L., M. & S. E. Ry. Co., 111 Mo. App. 394, 408, 85 S. W. 989; Kelly v. Cape Girardeau, 338 Mo. 103, 113, 89 S. W. (2) 41, 45; 25 C. J. S., Sec. 123, p. 725. In this situation, the landowners by instituting this type of action tacitly consent to the removal of the fence (Prosser, Torts, p. 91; 1 Restatement, Torts, Sec. 161, comment pages 374, 378) and the continued maintenance of the fence constitutes a temporary continuing trespass giving rise to successive causes of action. 1 Restatement, Torts, Sec. 160; Doyle v. Kansas City & S. Ry. Co., 113 Mo. 280, 20 S. W. 970; Hartman v. Tully Pipe Line Co., 25 N. Y. S. 24. In Kansas City, F. S. & M. R. Co. v. King, 63 Ark. 251, 38 S. W. 13, a railroad with a right of way across the plaintiff's land so fenced its way as to enclose the plaintiff's spring. The land was in the possession of a tenant so there was no proof of present damage to the landowner, but that court said, "It appears that the structure complained of was a fence, which, according to the adjudged cases, as we understand them, being temporary and not permanent in its character, gave to the party who might be entitled to sue for any damage consequent upon its erection a right to sue for such damages only as had accrued before the institution of the suit, and a right to bring successive actions for damages consequent upon the continuance of the structure thereafter, if the same [788] was wrongful." In addition, "One who intentionally enters land in the possession of another without a privilege to do so is liable, under the rule stated in § 158, to the possessor of the land as a trespasser thereon, although he acts under a mistaken belief of law or fact, however reasonable, not induced by the conduct of the possessor * * *." 1 Restatement, Torts, Sec. 164.

As the appellant urges, there is an exception to this rule of liability and measure of recovery where the appropriation is permanent and "where the actor is a public utility which could by condemnation proceedings have acquired a privilege permanently to maintain on the land the structure, chattel or other thing, unless it appears that the actor does not intend so to maintain it." 1 Restatement, Torts, p. 373; Prosser, Torts, note p. 91. But the exception does not mean that every trespass by a corporation invested with the power of eminent domain is permanent or compels a single action for all damages sustained by reason of the unlawful appropriation or invasion. Doyle

v. K. C. & S. Ry. Co., supra. In all the instances in which the rule has been applied the landowner in fact sought and prosecuted to a conclusion an action to recover all damages sustained. In several of those actions the trespassing corporation appealed and contended that the taking or injury was not permanent and that recovery could only be had for temporary damages. Blankenship v. Kansas Explorations, 325 Mo. 998, 30 S. W. (2) 471. And in all those instances the appropriation was in fact necessary for the very public purpose for which the easement could have been required in a condemnation proceeding. This is particularly true of the cases in which a railroad corporation, without authority, appropriates a right of way and constructs a railroad across land. The appropriation is permanent, it is for a public railroad purpose for which the right of way could have been condemned, and the measure of the landowner's recovery and damages is the same as in condemnation. McReynolds v. K. C., C. & S. Ry. Co., 110 Mo. 484, 19 S. W. 824; Webster v. K. C. & S. Ry. Co., 116 Mo. 114, 22 S. W. 474; Cochran v. M., K. & T. Ry. Co., 94 Mo. App. 469, 68 S. W. 367. Thus the unauthorized construction of an electric transmission line is permanent and the appropriation for a purpose for which an easement could have been acquired in a properly instituted condemnation proceeding. Tooker v. Missouri Power & Light Co., 336 Mo. 592, 599, 80 S. W. (2) 691; Phillips v. Postal Tel. Cable Co., 130 N. C. 513, 41 S. E. 1022. Likewise, the unauthorized construction of a crude oil pipe line would be permanent and the appropriation for a pipe line purpose as in the railroad cases. Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 671, 267 S. W. 647; Shell Pipe Line Corp. v. Woolfolk, supra. However, all trespasses to land incidental to the maintenance of pipe lines are not permanent and do not necessarily give rise to but a single action for damages. Shelley v. Ozark Pipe Line Corp., 327 Mo. 238, 37 S. W. (2) 518. In this case the fence is not permanent in the sense that the construction of a railroad, an electric line or a pipe line is permanent. It is not an integral part of the pipe line purpose for which private property may be condemned. There is no abstract right to condemn land for the mere purpose of erecting a fence and this fence is not necessary or essential to the corporation's full enjoyment of its easement. The course of this pipe line is from Wink, New Mexico, through Texas, Oklahoma and Missouri to Wood River, Illinois and, except for this fence in St. Ann, there are no fences along its entire right of way. In these circumstances the exception is inapplicable and the plaintiffs were not compelled to recover all damages in a single action.

This disposes of the essential merits of the appeal. As indicated in the opinion of the court of appeals, there was no error in the admission of evidence or in instructing the jury so prejudicial as to demand the granting of a new trial. Mo. R. S. 1949, Sec. 512.160. There is no evidence of actual malice, spite or ill will, the trespassing

fence had been maintained for a period of three and one half months and the award of $2750 punitive damages is so disproportionate as to be excessive in the sum of $2250. Therefore, [789] if the plaintiffs will, within fifteen days from the date of filing this opinion, enter here a remittitur in the sum of $2250 the total judgment for $657.50, as of the date of the original judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded because of the excessiveness of the verdict. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.