Clarence H. TWIEHAUS and Viola
Twiehaus, *Respondents*,

v.

WRIGHT CITY, Missouri, Appellant.

No. 52209.

Supreme Court of Missouri,
Division No. 2.

March 13, 1967.

McQuie & Deiter, Montgomery City, for appellant.

Ziercher, Tzinberg, Human & Michenfelder, Clayton, for respondents.

LAURANCE M. HYDE, Special Commissioner.

Action in three counts, the first two for $8308.17 claimed to be the balance due on a contract for construction of water and sewer lines between plaintiffs and the city; with a third count-seeking recovery on the theory of inverse condemnation for the value of the lines. The City's answer alleged the contract was invalid being in violation of Sec. 26(a), Art. VI of the Constitution and Secs. 88.670 and 432.070. (Statutory references are to RSMo and V. A.M.S.) The answer also denied any condemnation or appropriation of the water and sewer lines constructed by plaintiffs and contained a counterclaim seeking to recover $4876.35 paid by the City to plaintiffs on the contract.

The court entered judgment for plaintiffs for $8308.17, making the following finding: "Court finds the contract entered into between plaintiffs and defendant on October 13, 1955 to be valid and binding on the parties; and the Court further finds that defendant has assumed ownership of said sewer and water lines and appropriated them to its use." The City has appealed. We have jurisdiction because a construction of the Constitution is involved, since the trial court decided the contract involved was not prohibited by the Constitution but was valid and binding on the parties and this affects both plaintiffs' claim and defendant's counterclaim. Sec. 3, Art. V, Const.

Plaintiffs in their brief do not contest the City's claim that their contract violated Sec. 26(a), Art. VI of the Constitution by requiring payments to be made, in years following the year it was made, out of income and revenue of future years which it obviously did. Instead plaintiffs claim that under the doctrine of equitable estoppel the City could not assert its invalidity because of its representations, acts and conduct and is bound by it. This contract, made October 13, 1955, to be effective from the date of annexation of the addition, provided that

plaintiffs would build such lines "as will be needed for the proper development of said addition." It further provided that the City would reimburse plaintiffs for the construction cost after annexation of the addition by annual payments from "all revenue taxes on real estate and personal property, sewer sinking fund tax, park tax and all license fees, collected from the residents of said Twiehaus addition." Plaintiffs rely on State on inf. McKittrick ex rel. City of California v. Missouri Utilities Co., 339 Mo. 385, 96 S.W.2d 607, 615, 106 A.L.R. 1169, stating: "[T]he doctrine of estoppel * * * applies, not only to natural persons and private corporations, but to municipalities as well, and that even though such municipalities are acting in a 'governmental capacity'." However, none of the cases cited in support of this statement involved estoppel to assert a constitutional prohibition to a contract provision. Most of the cases cited involved, as did the Missouri Utilities case, the right of public utilities to continue operations or to operate in a way long permitted. Nevertheless in the Missouri Utilities case (96 S.W.2d l. c. 618) we held the city was not estopped from refusing a franchise and ousting the company from use of its streets by inaction prior to building its own plant.

■ More in point are cases holding invalid contracts prohibited by statutory or constitutional provisions, such as Fulton v. City of Lockwood, Mo.Sup., 269 S.W.2d 1 (1954); Grand River Township of De-Kalb County v. Cooke Sales and Service, Inc., Mo.Sup., 267 S.W.2d 322 (1954); Bride v. City of Slater, Mo.Sup., 263 S.W.2d 22 (1953); Donovan v. Kansas City, Mo. Sup.Banc, 352 Mo. 430, 175 S.W.2d 874, 179 S.W.2d 108 (1943); Likes v. City of Rolla, 184 Mo.App. 296, 167 S.W. 645 (1914); Grauf v. City of Salem, Mo.App., 283 S.W.2d 14. Equitable estoppel was urged in the Donovan case, in which the city had received and used articles furnished without a valid contract, making about as strong a case for equitable estoppel as could be imagined. The opinion of the Court en Banc (175 S.W.2d l. c. 881) held: "Equitable estoppel is impotent to purge transactions of the fatal infirmity of being in violation of law." In that case we also said contracts not conforming to statutory requirements "are ultra vires the municipality in the primary sense of that term." Certainly that is true of this contract violating an express constitutional provision. This contract was void ab initio and we hold there can be no equitable estoppel in this case.

Plaintiffs' claim of inverse condemnation is based on their contention that the City assumed ownership of the water and sewer lines and appropriated them to its use. The City says these lines were private lines constructed by plaintiffs to only the properties within the addition they were establishing; that plaintiffs voluntarily sought and received permission to connect these lines to the City's public systems, solely for the convenience and benefit of the property within their addition; and that the City has never made any use of the lines other than for service to the residents of the addition and has never done any act to appropriate them for public purposes.

■ Plaintiffs bought a tract of land, platted and developed it for the purpose of selling lots for profit. They requested and on April 14, 1955, received permission to connect the water lines they were constructing to the water system of the City. Construction of the water lines commenced in 1955 and completed in 1957. They received permission to connect their proposed sewer lines on June 9, 1955, after submission of plans to the State Board of Health and some construction was done on them in 1955; also completed in 1957. At a special election, December 6, 1955, plaintiffs' addition was annexed to the City with other land. Plans for the water and sewer lines were submitted to the City but no request for approval was shown. There was no formal action accepting or assuming control of the water and sewer lines by the City but the City several times has repaired

water line breaks and thawed out frozen water lines. There has been no maintenance done by anyone else. Permission for connecting the water lines to the City's system was sought and given six months before the illegal contract was made. This seems to indicate an original intent to dedicate to public use. Plaintiff Clarence Twiehaus expressed the view that he sold both systems to the City by the October 1955 contract.

 The basis of inverse condemnation is that under our constitutional provision (now Sec. 26, Art. I, 1945 Const.) "private property cannot be disturbed nor can the proprietary rights of the owner therein be divested until damages are ascertained and paid to the owner or paid into court for the owner." Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W.2d 66, 70. If property is taken or damaged without agreement or legal proceedings, one of several remedies of the owner is that "he may waive the tort and sue for the compensatory damages to which he would have been entitled if condemnation proceedings had been instituted prior to the entry", 248 S.W. 2d l. c. 70; see also Page v. Metropolitan St. Louis Sewer District, Mo.Sup., 377 S.W. 2d 348, 354; 27 Am.Jur.2d 408, Sec. 478; 30 C.J.S. Eminent Domain, § 399, p. 477; Nichols on Eminent Domain, Secs. 25.41 [2], 28.3 [1]. Considering first the water lines it appears that after receiving permission to connect with the City's system, they were completed pursuant to an invalid contract. The City made these payments to plaintiffs during seven succeeding years. This was an ultra vires agreement the City had no power to make and plaintiffs can claim no rights under it. There was only a single connection with the City's water system made at the northeast corner of the addition and the City furnished water through it to the residents of the addition. As noted, the City has done some sporadic maintenance work on the water lines in the addition but we cannot say such infrequent gratuitous acts amounted to an appropriation. No positive act of appropriation of these lines is shown. Instead the City only stopped paying to plaintiffs its taxes collected in the addition, required by the illegal contract. The water lines were there and the City served the residents of the addition through them. This was no more an appropriation than serving residents through the lines they would construct into their houses from the line in the street. Homes and buildings were built with expectation of using such facilities. Therefore it appears that these water lines should be considered as much dedicated to public use by plaintiffs as were the streets they constructed. We must hold there was no taking of the water lines by the City for which they can be held liable to plaintiffs for their value.

 The situation as to the sewers is different. State Board of Health approval was required before the City permitted connection. During the construction of the sewers, the City had a man on the site every day to inspect the installation and install the saddles which connected the main sewer lines with house service lines. The State Board of Health required a light hole in the sewer system and this was installed by the City. Also the City filled the streets where backfill had settled, adding more dirt and gravel. All of this is evidence of intent on the part of the City to be the owner of the sewer lines. Furthermore, in 1962, a City bond issue was authorized to change and add to the sewer system of the City. As originally built, the sewer system of plaintiffs' addition drained east through property known as the Archdiocesan property, over which an easement had been obtained, with an outlet under Highway 40 which was south of the addition. In the reconstruction of the City's sewer system this outlet through the Archdiocesan property was dug up and destroyed by the City and the outlet under Highway 40 was abandoned. A new line was built by the City through the Archdiocesan property and on to the west along the south side of the addition, with a new connection for the system of the addition installed by the City. This

not only reversed the flow of the addition's outlet from the east to the west, but the new line also became the outlet for other areas of the City, which according to the plans would be expanded in the future. This destruction and rebuilding of part of the system built by plaintiffs strongly indicates assumption of proprietorship by the City. Furthermore, appropriating the outlet of the sewer system of the addition for use of other areas of the City would amount to imposing an additional burden on the whole system of the addition which is an important factor on the issue of appropriation. See 26 Am.Jur.2d 823–827, Eminent Domain, Secs. 157–158; see also Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 267 S.W. 647, 649.

This is similar to the situation in Gunn v. City of Versailles, Mo.App., 330 S.W.2d 257, 261, on which plaintiffs rely. There a subdivision was dedicated by the plaintiffs as a part of that City with the approval of the City. Plaintiffs built a sewer for the subdivision along a city street and connected it to an existing city sewer. Thereafter the city built an extension sewer and "hooked on" to plaintiffs' sewer without their permission claiming plaintiffs had dedicated the sewer to public use. The court said: "Defendant City in this case is not merely doing a consequential damage to plaintiffs' property but has rather appropriated and taken it over for use by and integration into the city's sewer system. * * * Such action, without payment of just compensation to plaintiffs therefor, would amount to a taking of private property for public use without just compensation, which is prohibited by Section 26, Art. I, Constitution of Missouri 1945, V.A.M.S., and by the Fifth Amendment to the Constitution of the United States. Furthermore, such taking without compensation would be in contravention of due process of law as guaranteed by the Fifth Amendment to the Federal Constitution and by Section 10, Art. I of our State Constitution."

■ In the Gunn case the court reversed the judgment in favor of the City and remanded the cause with directions "to enter its mandatory injunction in favor of plaintiffs and against defendant, directing that defendant, within thirty days thereafter, either (1) Institute proceedings under the Missouri statutes to 'take and appropriate' plaintiffs' sewer line or (2) Remove the connection heretofore made by it on the south end of plaintiffs' sewer line." (330 S.W.2d 1. c. 263.) In this case, the City can be given no such option because it has destroyed the outlet to plaintiffs' sewer system and constructed a new outlet line not only for plaintiffs' system but for other territory with provision for future expansion of its use. Our view is that this considered with the other acts of the City during the construction of the sewer system amounted to an appropriation of the sewer system of plaintiffs' addition for which they are entitled to compensation.

■ The counterclaim of the City seeks recovery of the amount paid plaintiffs on the illegal contract. Since we hold the City is liable to plaintiffs for the value of the sewers constructed by them, and taken by the City, as sought in the third count of their petition, the City is entitled to credit on any judgment against it for the amount it has paid plaintiffs. The evidence indicates that the value of this sewer system may be greater than the amount so paid. However, if this value is found to be less than the amount paid to plaintiffs, the City should have judgment for the difference.

Judgment reversed and cause remanded for further proceedings in accordance with the views herein expressed.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.