Clay C. SHELTON and Ruby M. Shelton,
his wife, Plaintiffs-Respondents,

v.

M & A ELECTRIC POWER COOPERA-
TIVE, a corporation, Defend-
ant-Appellant.

No. 8891.

Springfield Court of Appeals,
Missouri.

Jan. 29, 1970.

Motion for Rehearing Denied Feb. 13, 1970.

Application to Transfer Denied April 13, 1970.

Dalton, Treasure & Bullard, Kennett, for defendant-appellant.

Ward & Reeves, James E. Reeves, Caruthersville, for plaintiffs-respondents.

STONE, Judge.

On the theory of inverse condemnation, plaintiffs Clay C. Shelton and Ruby M. Shelton, his wife, instituted this action at law on August 3, 1967, against defendant M & A Electric Power Cooperative, a corporation, by the filing of their petition for damages allegedly sustained by reason of defendant's "conversion and appropriation" in 1961 of "a power line easement and right-of-way" across plaintiffs' 60-acre farm about 14 miles north of Kennett in Dunklin County, Missouri, and the construction and maintenance of an electric transmission line over and along that right-of-way. In its answer, defendant pleaded an easement indenture executed by plaintiffs on August 11, 1960, and recorded in Dunklin County. By way of reply, plaintiffs admitted execution of that easement indenture but averred that it was "null and void and of no defense to plaintiffs' petition" because (a) it was without consideration, (b) there was a failure of consideration, and (c) the indenture was procured by fraud and misrepresentation. "In the alternative," plaintiffs asserted that, even if the easement indenture was valid, it authorized recovery of the damages sought in plaintiffs' petition. When the case came on for trial, defendant stood on its motion for a directed verdict at the close of plaintiffs' case, and the jury returned a verdict of $1,250 upon which judgment was entered. Defendant appeals.

During 1960, a representative of defendant contacted plaintiff Clay, the postmaster at Clarkton, Missouri, on several occasions concerning an easement for an electric transmission line along the north line of plaintiffs' farm, a distance of about one-half mile. According to plaintiff Clay, defendant's representative stated that plaintiffs would be paid for "all the poles that were erected there" and for "any damage incurred on the farm in any way," but no representation was made as to, and plaintiffs did not know, how many poles would be erected or what damage might result. These conversations, with plaintiff Ruby also present, terminated in and were merged into a written easement indenture captioned "Right-of-Way Easement" admittedly executed and delivered by plaintiffs to defendant on August 11, 1960.

The here material provisions of the easement indenture are that plaintiffs "do hereby grant" unto defendant, its successors or assigns, "the perpetual right to enter upon" plaintiffs' 60-acre farm as described and "to construct, reconstruct, repair, operate and maintain" thereon an electric transmission line or system and "to cut and trim trees and shrubbery . . . located within 50 feet of the center line of said line or system . . . . The Cooperative [defendant] agrees to pay to the undersigned [plaintiffs] for the privileges herein granted, when the line or system has been completely constructed, for poles and

anchors located within the boundaries of the above-described lands [plaintiffs' 60-acre farm] as follows: $25.00 per pole in cultivated land. $25.00 per anchor in cultivated land. $10.00 per pole in uncultivated land. $10 per anchor in uncultivated land. . . . The Cooperative [defendant] agrees to pay to the grantors herein [plaintiffs] any reasonable damage to said grantors' real property (exclusive of damages to timber thereon), to crops growing thereon, and to livestock, caused by the construction, operation or maintenance of said lines."

The contemplated electric transmission line was constructed by defendant during the summer of 1961. Thereafter, to wit, "about a year or more" after plaintiffs had executed the easement indenture on August 11, 1960, a representative of defendant called on plaintiff Clay and said that he had come "to settle with me [plaintiff] and pay me for the easement." The gist of plaintiff Clay's account of the ensuing conversation was that defendant's representative offered to pay the sum stipulated in the easement indenture for two poles but refused to "allow" anything for alleged damage to fences, while plaintiff Clay insisted that he should be paid for seven poles and for alleged damage to fences and crops during the construction period. According to plaintiff Clay, he said "if that's all you're going to pay me for, just two poles, I'll take nothing," and defendant's representative concluded the conversation by responding "you'll get nothing."

On cross-examination, plaintiff Clay readily conceded that he had not located or determined the north boundary line of the 60-acre farm by survey, but opined that "the property line is in the vicinity of this fence row, approximately where the fence row is, and the poles are in the fence row." The pictorial exhibits portray a dense fence row several feet wide (plaintiff Clay expressly disclaimed any knowledge as to the width of the fence row) and likewise several feet high, a veritable thicket of shrubs, bushes and gross vegetation. There is also a woven wire fence, about one-half mile in length, along the entire north line of plaintiffs' farm. But in the seven photographs of the fence row and defendant's transmission line, the woven wire fence is not visible and we are able to discern only what may be the tips of two posts. In short, there was no evidence fixing the location of the north boundary line of plaintiffs' farm or the location of any pole or poles in defendant's transmission line with reference to that boundary line, and the record would not have permitted a finding as to the number of poles actually set on plaintiffs' farm.

Plaintiffs had never cultivated or resided on this 60-acre tract and, during their period of ownership, a tenant had stock on the farm "a part of the time" and raised some crops on it. When defendant's transmission line was being constructed, crops were "up and growing"—plaintiff Clay recalled "the corn and also some cotton, and if there was any more I cannot be certain about it." He could supply no information as to "how many acres . . . or parts of acres were damaged or destroyed" or as to "the extent of the crop damage," and he knew only that he had lost "the portion that I would receive as the landlord." Plaintiff Clay also complained that a fence had been cut twice, that "a small bridge . . . across a ditch" had been destroyed, and that defendant's employees had "trafficked over the ground" during construction leaving ruts in the soil at the ends of crop rows. However, on cross-examination plaintiff Clay quickly agreed that, when contacted by defendant's representative after the line had been constructed in 1961, he had told that representative "you talk to the tenant about the bridge and the fence and the crops," and that subsequently he (plaintiff Clay) had been informed by the tenant "he talked about the bridge with them." But the tenant did not testify, and what had transpired between the tenant and defendant was not otherwise developed.

Plaintiff Ruby made a fleeting testimonial appearance confirming her presence during discussions between defendant's representative and her husband prior to execution of the easement indenture, disavowing any recollection of what had been said on those occasions since "I was busy," and verifying her execution of the easement indenture because, as plaintiffs' counsel phrased it, "he [plaintiff Clay] asked you to."

Plaintiffs closed their case with witness Scales, a real estate appraiser, who, over defendant's objections, expressed the opinion that "the fair value" of plaintiffs' 60-acre farm was $18,000 immediately before defendant's alleged appropriation "of the power line easement" but was only $14,-545.50 immediately thereafter, and that plaintiffs thus had been damaged in the sum of $3,454.50.

■ By *plaintiffs' sole verdict-directing instruction 5* "NOT IN MAI," a verdict for them was ordered if the jury believed "First, defendant appropriated plaintiffs' property rights to defendant's own use and Second, as a direct result of such appropriation plaintiffs sustained damage, *unless you believe plaintiffs are not entitled to recover by reason of Instruction No. 3."* (All emphasis herein is ours.) By *defendant's sole verdict-directing instruction 3* identified as "MAI 28.11 Modified," a verdict for it was ordered if the jury believed "First, plaintiffs signed and delivered the easement to defendant, and Second, plaintiffs were tendered $20 for such easement, *unless you find for plaintiffs under Instruction No. 4."* By *plaintiffs' instruction 4* "NOT IN MAI," the jury was told that "Your finding must be for plaintiffs *on*

*the defense of the written easement* if you believe that: First, defendant's agent agreed to pay plaintiffs as consideration for the written easement, for each pole located along plaintiffs' north line, for plaintiffs' crop damage and for plaintiffs' fence, and for plaintiffs' other damage, and Second, defendant has failed and refused to pay the said consideration." By *plaintiffs' instruction 6* identified as "MAI 9.02 Modified," the jury was told that, "If you find in favor of the plaintiffs, then you must award plaintiffs such sum as you believe was the difference between the fair market value of plaintiffs' whole property immediately before the taking in 1961, and the value of plaintiffs' remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which defendant has the right to make of the property taken."[1] *Plaintiffs' instruction 7* identified as MAI 15.01 and *plaintiffs' instruction 8* identified as MAI 2.02 also were given.

It is clear that plaintiffs' submission was on the theory of inverse condemnation, and their counsel forthrightly so declared at the outset of their oral argument upon appeal. "The basis of inverse condemnation is that under our constitutional provision (now Sec. 26, Art. I, 1945 Const.) 'private property cannot be disturbed nor can the proprietary rights of the owner therein be divested until damages are ascertained and paid to the owner or paid into court for the owner.' Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W. 2d 66, 70. *If property is taken or damaged without agreement or legal proceedings,* one of several remedies of the owner is that 'he may waive the tort and sue for the compensatory damages to which he

---

1. In inverse condemnation, the measure of the landowners' recovery is the same as in condemnation [Beetschen v. Shell Pipe Line Corp., 363 Mo. 751, 759, 253 S.W. 2d 785, 788], i. e., the difference between the fair market value of the entire tract immediately before and immediately after the appropriation [State ex rel. Kansas City Power & Light Co. v.

Keen, Mo., 332 S.W.2d 935, 937(2); KAMO Electric Coop. v. Baker, 365 Mo. 814, 817, 287 S.W.2d 858, 861(1); Empire Dist. Elec. Co. v. Johnston, 241 Mo.App. 759, 767, 268 S.W.2d 78, 83 (5)]; and that was the measure of damages submitted in plaintiffs' instruction 6.

would have been entitled if condemnation proceedings had been instituted prior to the entry,' 248 S.W.2d l. c. 70 . . . ." Twiehaus v. Wright City, Mo., 412 S.W.2d 450, 453(5).

■ As all of the parties recognize, there *was* an "agreement" in the instant case, namely, the easement indenture admittedly executed and delivered by plaintiffs on August 11, 1960; and, as plaintiffs' counsel candidly state, "the written easement [indenture] is still in existence, of record, and the decision in this case does not cancel it." In fact, counsel emphasize that cancellation of the easement indenture is not sought and that no equitable power of the court is invoked. But they insist that, because of alleged *failure of consideration*[2] for the easement indenture, it affords no defense to their action in inverse condemnation. That was the issue posed and submitted by plaintiffs' instruction 4, the giving of which is the initial error assigned by defendant.[3]

■ By the easement indenture of August 11, 1960, plaintiffs granted and conveyed to defendant a right-of-way easement, i. e., a nonpossessory interest in their farm.[4] The easement indenture itself recited and embodied the consideration for plaintiffs' grant, namely, defendant's promise "to pay to [plaintiffs] for the privileges herein granted, when the line or system has been completely constructed, for poles and anchors located within the boundaries of the above described lands," a sum to be computed as there specified, and the further promise "to pay to [plaintiffs] any reasonable damage to said [plaintiffs'] real property (exclusive of damages to timber thereon), to crops growing thereon, and to livestock, caused by the construction, operation or maintenance of said lines."[5] The easement indenture neither made, nor indicated an intention to make, defendant's performance of those promises a condition precedent to vesting of the easement or defendant's nonperformance thereof a condition subsequent for which the easement might be divested. With the absolute quality of plaintiffs' grant and conveyance of the right-of-way in no wise limited or qualified by a condition precedent or a condition subsequent, defendant's promises, and not the performance thereof, constituted the consideration for the grant [McKee v. Cochran, Mo.App., 272 S.W. 1091, 1092(2); 17 C.J.S. Contracts § 97, p. 781], and plaintiffs' remedy for defendant's alleged failure to perform its promises was an action for breach of the agreement. See Bevins v. Harris, Mo., 380 S.W.2d 345, 351(4); Anderson v. Gaines, 156 Mo. 664, 670–671, 57 S.W. 726, 728; Allison v.

---

2. A plea of *failure of consideration* implies that a consideration, once existing and sufficient, has become worthless or has ceased to exist or has been extinguished, partially or entirely [Radford v. Radford, Mo., 388 S.W.2d 33, 39(10)], and thus is distinguished from a plea of *lack of consideration*. 1 Corbin on Contracts § 133, p. 572.

3. By attacking "the defense of the written easement" on the sole *submitted* ground of failure of consideration, plaintiffs abandoned all other pleaded grounds. Cf. Burnett v. St. Louis Public Service Co., Mo., 337 S.W.2d 921, 923(1); Welch v. McNeely, Mo., 269 S.W.2d 871, 875 (1); McIntyre v. M. & K. Dept. Store, Inc., Mo.App., 435 S.W.2d 737, 740(2); Graham v. Conner, Mo.App., 412 S.W.2d 193, 197(1); Stevens v. Waldman, Mo. App., 375 S.W.2d 633, 637(2).

4. 5 Restatement of Property § 450, Comment b, p. 2903; 25 Am.Jur.2d Easements and Licenses § 2, pp. 417–418; 28 C.J.S. Easements § 1 b, p. 620; Farmers Drainage Dist. of Ray County v. Sinclair Refining Co., Mo., 255 S.W.2d 745, 748; Beetschen v. Shell Pipe Line Corp., supra note 1, 363 Mo. at 757, 253 S.W. 2d at 786(2); Bunyard v. Turley, Mo. App., 410 S.W.2d 706, 708(3); Dalton v. Johnson, Mo.App., 319 S.W.2d 66, 67 (1).

5. Subject to certain qualifications not here applicable, "any promise whether absolute or conditional is a sufficient consideration" for a contract. 1 Restatement of Contracts § 77, p. 86. See 17 Am.Jur.2d Contracts § 104, p. 448; 17 C.J.S. Contracts § 74, l. c. 762; id. § 97, p. 781.

Cemetery Caretaking Co., 283 Mo. 424, 431, 223 S.W. 41, 43.

■ As we have noted, plaintiffs recognize, in fact emphasize, that the easement indenture remains in existence and of record, that its cancellation is not sought, and that no equitable power of the court is invoked; but their appellate brief informs us that, by this suit, they have, "in effect, elected to rescind the transaction for [defendant's] failure to pay the consideration." However, our Supreme Court has held repeatedly that, even in an *equitable action* seeking cancellation of a conveyance for grantee's failure to fulfill the promise in consideration of which the conveyance was executed and delivered, the operative effect of the conveyance cannot be defeated and the instrument may not be avoided or set aside in the absence of some additional ground recognized as justifying equitable relief.[6] A fortiori, in this *action at law* the operative effect of plaintiffs' unconditional grant and conveyance of a right-of-way cannot be defeated on the *sole* ground of failure of consideration, i. e., for defendant's alleged failure to fulfill the promises in consideration of which plaintiffs executed the easement indenture. In the cases cited by instant plaintiffs [Herrold v. Hart, Mo., 290 S.W.2d 49; Putnam County Supply Corp. v. Mendota Mining Co., Mo., 285 S.W. 409], equitable relief was sought and granted *but actual fraud was found in each instance*. Neither case is controlling or persuasive here.

From the foregoing it necessarily follows that plaintiffs' instruction 4 was grossly and prejudicially erroneous.

■ Plaintiffs' counsel also argue that, even if the easement indenture was operative and could not be avoided for failure of consideration, the judgment should be affirmed anyway because recovery of damages was authorized by that instrument and the verdict for $1,250 was supported by the evidence. But, having tried and submitted the case in the circuit court on the theory of inverse condemnation, i. e., that their property had been damaged without any prior valid agreement or legal proceedings, they may not here support the erroneous judgment nisi on the altogether different theory, not submitted by and wholly inconsistent with their instructions, that a valid easement indenture authorized the damages awarded. For nothing is better settled than that an appellate court will review a case only on the theory upon which it was tried[7] and that a party will be held on appeal to his theory upon trial.[8] Since our holding concerning plaintiffs' instruction 4 is dispositive of the appeal, we do not gratuitously reach for and needlessly rule other questions discussed in the briefs, particularly in view of the state of the record. State ex rel. Sho-Me Power Corp. v. Hawkins, Mo.App., 337 S.W.2d 441, 444. "Sufficient unto the day is the evil thereof." Matthew 6:34.

The judgment nisi is set aside and the cause is remanded with leave to plaintiffs

6. Radford v. Radford, supra, note 2, 388 S.W.2d at 39(9, 11); Bevins v. Harris, Mo., 380 S.W.2d 345, 351(4); Kohnke v. Kohnke, Mo., 250 S.W. 53, 56(1); Alward v. Boatwright, Mo., 193 S.W. 568, 570; Anderson v. Gaines, 156 Mo. 664, 57 S.W. 726, 728(5).

7. Olsten v. Susman, Mo., 362 S.W.2d 612, 614(3); Wartenbe v. Car-Anth Mfg. & Supply Co., Mo., 353 S.W.2d 570, 571 (1); Welch v. McNeely, supra note 3, 269 S.W.2d at 875(2); Grider v. Twin City Fire Ins. Co., Mo.App., 426 S.W. 2d 698, 701(6); Griffin v. Anderson, Mo.App., 369 S.W.2d 889, 892(7); Haire

v. Stagner, Mo.App., 356 S.W.2d 305, 308(3).

8. King v. Guy, Mo.App., 297 S.W.2d 617, 625–626(16); Southwestern Bell Telephone Co. v. Webb, Mo.App., 393 S.W.2d 117, 120(1); Moore v. State Farm Mutual Automobile Ins. Co., Mo.App., 381 S.W.2d 161, 166(6); Hood v. M. F. A. Mutual Ins. Co., Mo.App., 379 S.W.2d 806, 814(14); Hill v. Seaboard Fire & Marine Ins. Co., Mo.App., 374 S.W.2d 606, 610(6); Greathouse v. Wolff, Mo. App., 360 S.W.2d 297, 301(2); Wardin v. Quinn, Mo.App., 324 S.W.2d 151, 154 (3).

to amend their petition, if they be so advised, and for further proceedings not inconsistent with this opinion.

TITUS, P. J., and HOGAN, J., concur.