COUNTY OF BOLLINGER et al., Plaintiffs-Respondents,

v.

Martha LADD, Defendant-Appellant,

and

Henry Acuff and Harold Glasener, Defendants-Respondents.

No. 38354.

Missouri Court of Appeals, St. Louis District, Special Division.

Feb. 14, 1978.

Motion for Rehearing and/or Transfer Denied March 10, 1978.

Buerkle, Buerkle & Lowes, Albert C. Lowes, Jackson, for defendant-appellant.

Kenneth W. Shrum, Marble Hill, Jim Spain, Bloomfield, for plaintiffs-respondents.

CORRIGAN, Special Judge.

This action for declaratory judgment was brought by the County of Bollinger to de-

termine the rights of the parties with respect to two roads located in Bollinger County. The suit, instituted in Bollinger County was transferred to the Circuit Court of Cape Girardeau County, and it is from the judgment of that court that this appeal was taken.

The old road in dispute runs south through the lands of Martha Ladd, Harold Glasener, and Henry Acuff. Prior to 1968, it was a county road, open to the public. In 1968, in preparation for the construction of a new road, the judges of the county court agreed with the Ladds that if they would give a right of way for the new road, they could have as their own property that portion of the old road which crossed their property, once the new road was completed. This agreement was reached in the county court with all three judges present but no writing, other than the surveyor's plat, was ever made. The three judges and Mrs. Ladd testified concerning the agreement, but the trial court indicated that it would not consider this evidence because a county court can speak only through its records and was admitting the evidence in accordance with Supreme Court Rule 73.01, only for the purpose of allowing review by an appellate court.

Because entrance to the old road across Mrs. Ladd's property had been barricaded by or on behalf of Mrs. Ladd in October, 1975, defendant Harold Glasener cross-claimed against Mrs. Ladd, seeking a declaration that the old road is open and public and further seeking an injunction restraining Mrs. Ladd from obstructing the road and ordering her to remove any obstructions she had placed there. Glasener had used the old road frequently before its obstruction and twice clipped the cable in order to continue using it. The new road does not touch Glasener's land, and he cannot get to it without crossing Mr. Acuff's property. The southern end of the old road is still open, but Glasener cannot use this without crossing Acuff's land except by "going on down and double back and coming back up the old road." This is nearly impossible when pulling machinery. Several other residents of the community also testified to the difficulty of taking a vehicle or equipment up the southern part of the road to Glasener's farm.

Since Mrs. Ladd claims the road was abandoned, and it was stipulated that no formal proceedings were instituted to close the road, much of the testimony at trial concerned the use or nonuse of the old road within the past five years.

Eleven witnesses testified they had used the old road on numerous occasions from 1971 through 1974. Two of these witnesses were county employees who bladed the road on at least two occasions between 1968 and 1973.

Defendant Glasener used the old road every weekend and occasionally during the week until it was barricaded. He has also seen others use this road during that time period.

Defendant Ladd saw no one other than Glasener use the old road on weekends since the new one was built and knew of no grading since that time.

After presentation of all evidence, the trial court entered findings of fact and conclusions of law. It determined that members of the public had continued to use the old road after the construction of the new and that public money had been spent on maintenance of the old road since 1968. The court ruled that the old road is a public road and was not abandoned or vacated by nonusage and that Martha Ladd acted unlawfully in obstructing it. She was enjoined from obstructing the road and ordered to remove obstructions she had placed there. From this judgment defendant Martha Ladd appeals.

The first point to be considered is the effect of the oral contract between the county judges and the appellant regarding the status of the old road. The testimony is uncontroverted that the judges had agreed to abandon the old road and return it to appellant in exchange for the right of way for the new road. Even though this agreement was never committed to writing, there appears to be no doubt as to the good intentions of the various parties.

Section 432.070, RSMo.1969, provides that contracts made by counties shall be within the scope of their powers and committed to writing. Abandonment of a road can only be accomplished in accordance with Chapter 228 RSMo.1969.

Appellant contends that the statutory requirements are inapplicable because the oral contract has been fully performed by all parties. However, the thrust of these statutes is to protect the public interest, and that interest cannot be and was not protected by an oral contract to which the public was not a "party". The only manner in which the public can be made a party to a contract is through statutory compliance. *State v. Faith*, 180 Mo.App. 484, 490–491, 166 S.W. 649, 651 (1914).

■ Assuming, arguendo, that an oral contract for abandonment is not per se invalid, appellant contends that the county should be forced to abandon the old road on the theory of implied contract or estoppel. Appellant performed her side of the bargain and argues that the county should be barred from gaining a benefit by retaining title to the old road. In support of her position, appellant relies on *Sparks v. Jasper County*, 213 Mo. 218, 241, 112 S.W. 265, 271 (banc 1908); *Bride v. City of Slater*, 263 S.W.2d 22, 26–27 (Mo.1953); and *County of St. Charles v. Rollings*, 537 S.W.2d 806, 807–808 (Mo.App.1976). In all three of these cases, although there is some language to indicate some statutory compliance, the matter involved was totally within the contractual powers of the county court. In the case at bar, however, the county court had no authority to bargain for the abandonment of the road short of statutory compliance. For the county judges to say that the road is abandoned does not make it so. Such a promise is inoperable as outside the scope of their powers as provided in § 432.-070, RSMo.1969. In addition thereto, there was no compelling public interest at stake in the cited cases as here where the county court was attempting to divest the public of its vested right to a public road.

■ The Missouri courts have consistently held that municipalities cannot be held liable either on a theory of implied contract or estoppel "by reason of . . . accepting and using the benefits derived from void contracts . . . ." *Likes v. City of Rolla*, 184 Mo.App. 296, 304, 167 S.W. 645, 647[3] (1914). Without a written contract, even when the other party has performed, no legal liability is created on a theory of satisfaction, estoppel or implied contract.

Clearly, this contract was void because it exceeded the statutory powers of the county court; because it was not committed to writing; and because the vested public interest must be protected from even innocent abuses of power.

The next issue to be considered is whether the old road was abandoned by a nonuser pursuant to § 228.190 RSMo.1969. Once a road has become established as a public road, and there is no contention to the contrary here, the road becomes vested in and inures to the benefit of the public. The right to use cannot be abandoned unless all the public concur. *State ex rel. Carter County v. Lewis*, 294 S.W.2d 954, 958[4] (Mo.App.1956); *Oetting v. Pollock*, 189 Mo. App. 263, 271, 175 S.W. 222, 224 (1915); *Connell v. Baker*, 458 S.W.2d 573, 577 (Mo. App.1970). And the loss of such right of use may result only from the acts and doings of the parties entitled to the public road or highway. *Johnson v. Rasmus*, 237 Mo. 586, 592, 141 S.W. 590, 591 (1911), *Connell*, 458 S.W.2d at 577.

■ In both *Lewis* and *Connell*, even though travel on the disputed road had greatly diminished, the court nevertheless held that decreased travel over the road did not work an abandonment, nor affect its status as a public road so long as it was open for use by the public generally and was being used by those who desire or have occasion to use it. For the character of a road as to whether it is public or private is determined by the extent of the right to use it, and not by the extent to which that right is exercised.

■ Numerous witnesses testified in the case at bar that they had either used the old road or had observed others use it during

the period of time in question. Clearly, there was substantial evidence from which the trial court could have found, and in fact did find, that there had been continuous though intermittent use of the road by the public. Appellant has failed to prove by clear and cogent evidence that the road was abandoned in conformity with *Lewis*, supra. Hence, we are constrained to find that the old road was not abandoned and title cannot revert to appellant but must remain with the county.

The trial court did not rule on the parties' rights with respect to the new road. Respondent county argues that appellants' actions in giving the land to the county and permitting the public to use the new road amounted to an outright common law dedication of her land to public use. To reach this conclusion the county would ignore any evidence of the agreement between it and appellant, including their intent, and would consider only the action and acquiescence of appellant in permitting the county to take, construct, maintain and use the land as a public road.

Addressing the problem of common law dedication, our courts have clearly stated that a property owner may by his actions so express an intention to dedicate that he is estopped to deny that this was his intent. The Missouri Supreme Court announced this principle in *School District No. 84 v. Tooloose*, 195 S.W. 1023, 1024 (Mo.1917), when it held that:

> "All that is necessary to be shown in such cases is an adverse use on the part of the public . . . or a user by the public under such circumstances and for such a period of time, with the acquiescence of the owner, as to imply on his part a dedication of the land and a prescriptive right thereto on the part of the public by its acceptance and appropriation as a public highway, *all of which may be shown by facts and circumstances, as well as positive proof.*" (Emphasis added)

Although this principle has remained constant through the years, the appellate courts have somewhat amplified it in *Lozier v. Bultman*, 286 S.W.2d 43 (Mo.App.1955)

and *Connell v. Jersey Realty & Investment Co.*, 352 Mo. 1122, 180 S.W.2d 49 (1944). In *Connell* the court held that:

> "To constitute a common law dedication, the owner must have done something by act or word which would unequivocally point to but one conclusion, namely, that the owner *intended to dedicate* to public use. Unequivocal means not doubtful, not ambiguous, clear, plain." 180 S.W.2d at 53[7].

In *Tooloose* and *Lozier* the courts found a common law dedication and that the public had used the road in question for at least fifteen years. Viewing the facts of this case in their narrowest sense, appellant permitted the county to take and use her land; the county constructed a road therein and the public used it for seven years prior to the institution of this action; appellant's acquiescence to the use of her land could easily be construed as a common law dedication under the principle espoused in *Tooloose.*

A careful analysis of the language in *Tooloose* and *Connell*, supra, however, negates the conclusion that appellant's acquiescence to the use of her land per se resulted in dedication. *Tooloose*, paraphrased, holds that acquiescence sufficient to show dedication *may be shown by facts and circumstances, as well as positive proof.* 195 S.W. at 1024.

If dedication can be shown by facts and circumstances, certainly the converse must be likewise valid. Obviously, the appellate court had this in mind when it held in *Connell*, supra, that unequivocal intent is necessary for common law dedication.

Though we have previously held that the oral contract between the parties was statutorily unenforceable, nevertheless, in view of the law above cited, consideration must be given to the oral testimony of the county judges and appellant for the sole purpose of considering their intent in this transaction. In so doing, we must be cognizant of the longstanding proposition that the private intent of the landowner will not defeat an otherwise valid dedication, *Main v. Nash*, 212 Mo.App. 689, 245 S.W. 581, 582 (1922).

■ Here, the uncontroverted evidence was that the county judges offered to abandon the old road to appellant in exchange for her conveyance of the land to build the new road. Obviously, the joint intent of the parties was a promise for a promise. This was not the private intent of only the appellant, but was the underlying intent of all parties on which this oral agreement was bottomed. Appellant performed her side of the bargain, but the county could not. By virtue of this illegal, but innocent, agreement, appellant lost title to the "new road" land and received nothing in return. To permit this to occur would be to violate the basic constitutional protection of a landowner from the appropriation of his land by a condemning authority without compensation. Therefore, we conclude that under all the facts and circumstances of this transaction appellant did not dedicate her land to the public.

■ Since there was no dedication and since the agreement between appellant and the county was invalid, the construction of the new road was an unlawful appropriation of private property to public use without compensation. Missouri cases clearly establish that where a body having the right to condemn property appropriates it without legal authority, and makes permanent improvements thereon the landowner may recover compensation. The court in *Doyle v. Kansas City & S.R.R. Co.*, 113 Mo. 280, 20 S.W. 970 (1892) held:

> "But, where the injury is necessarily of a permanent nature, as in the case at bar, and consists in the *absolute taking* of a strip of ground, and doing this in such a manner as to incidentally injure the entire property abutting on the strip, there the damage, because of its permanency, will admit of but one recovery, which will obviously include all damages past, present and prospective. . . . This being the case, a judgment of recovery and satisfaction thereof will operate to vest in the defendant company an easement in the land, as much so and as effectually to all intents and purposes as if condemnation proceedings had been

regularly instituted and conducted." (Emphasis supplied) 113 Mo. at 286–287, 20 S.W. at 971.

The same case also sets forth the measure of recovery as the actual value of the land taken for a right of way plus any diminution in value of the land from which it was taken. 20 S.W. at 971[4]. The reasoning of the *Doyle* case has been followed in other, similar situations in *Smith v. City of Sedalia*, 244 Mo. 107, 124, 149 S.W. 597, 601 (banc 1912); *Tooker v. Missouri Power & Light Co.*, 336 Mo. 592, 80 S.W.2d 691, 695 (1935); *Beetschen v. Shell Pipe Line Corp.*, 248 S.W.2d 66, 70 (Mo.App.1952); *Beetschen v. Shell Pipe Line Corp.*, 363 Mo. 751, 253 S.W.2d 785, 788 (1952).

The circumstances of the present case are not greatly unlike those of *Twiehaus v. Wright City*, 412 S.W.2d 450 (Mo.1967). There plaintiffs who were developing a subdivision received permission to connect sewer lines and water lines to the city systems. The court, in passing, noted: "This seems to indicate an original intent to dedicate to public use," but did not return to this subject. Some months after permission was granted, plaintiffs and the city made a contract under which plaintiffs were to build lines necessary for the proper development of the addition and the city was to reimburse them for construction costs by annual payments from certain revenues to be collected from residents of the addition. The necessary lines were constructed but only partial reimbursement was made. The court held the contract invalid as being in violation of the Missouri Constitution and several statutes and ruled that the city was not estopped to deny that invalidity. 412 S.W.2d at 452. The plaintiffs had sought recovery on a theory of inverse condemnation as well as on the contract, and the Court found that the city had appropriated the sewer lines, destroying and rebuilding part of the system and connecting additional city lines to it. The court held at 412 S.W.2d at 454 that since the city had appropriated the sewer and could not disconnect its lines the plaintiffs were entitled to compensation. 412 S.W.2d at 454. The same rule would seem to govern the instant case

where the county has appropriated land by constructing a permanent road thereon.

As respondent county notes, appellant did not request such relief. However, this does not prevent a court from granting it. In *Mayor, Councilmen, etc. v. Dealers Transport Co.*, 343 S.W.2d 40 (Mo. banc 1961), a declaratory judgment suit, the court said:

"Under the Declaratory Judgment Act, the relief should be complete. As said in 26 C.J.S. Declaratory Judgments § 161, p. 374, 'As a general rule, in awarding declaratory relief, the court should make a full and complete declaration, disposing of all questions of right, status, or other legal relations encountered in adjudicating the controversy  . . . .'" 343 S.W.2d at 43[3].

Likewise, in *Chapman v. Schearf*, 360 Mo. 551, 229 S.W.2d 552, 555[5] (banc 1950), the court held that although defendants did not request affirmative equitable relief, "the trial chancellor in determining the issues of injunctive relief sought by plaintiffs properly undertook to do full, adequate and complete justice between the parties justified by the evidence." The court in *Hoechst v. Bangert*, 440 S.W.2d 476 (Mo. 1969) cited *Chapman* in approving injunctive relief granted by the trial court to defendants. As in the instant case, appellant had not requested affirmative relief but respondents had requested the court to declare the rights of the parties and to grant specific injunctive relief and such other relief as should be appropriate. The court found that under all the pleadings and the evidence the trial court did not err in granting the injunction.

Where the trial court does not fully adjudicate the rights of the parties, it appears that an appellate court may do so. In *Ford v. Boyd*, 298 S.W.2d 501 (Mo.App.1957), a suit for removal of trustees, this court said:

"The question now before us is not whether the trial court should have fully ruled these two other questions but whether we should now do so. As said by the Supreme Court in *Lins v. Lenhardt*, 127 Mo. 271, 29 S.W. 1025, 1027, 'When an equity cause comes up to this court, it is

for hearing de novo, and it will be considered for the most part as if it had originated here, and was to be heard for the first time.'" 298 S.W.2d at 507[7]. The same standard of review is applicable to declaratory judgment actions. Rule 73.-01[3], *Melton v. Ensley*, 421 S.W.2d 44, 47 (Mo.App.1967), and although the court in *Ford v. Boyd* did not find further relief appropriate in that situation, it would seem proper in the instant case.

We affirm the lower court's ruling as to the old road and remand the case for a new trial only on the issue of damages that appellant sustained as a result of the appropriation of the "new road" land.

CLEMENS, P. J., and DOWD, SMITH and RUDDY, JJ., concur.